IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA SIVA KUMARAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:20-cv-03873-GHW-SDA |
| ADM INVESTOR SERVICES, INC., | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

Daryl M. Schumacher (IL Bar No. 6244815)
Kopecky Schumacher Rosenburg LLC
120 N. LaSalle Street, Suite 2000
Chicago, IL 60602
(312) 380-6556
dschumacher@ksrlaw.com

*Admitted Pro Hac Vice*

*Counsel for Defendant ADM Investor Services, Inc.*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ………………………………………………………… ii

I.      Facts Relevant to The Parties' Agreement to Arbitrate ………………………………1

        A.      The Parties Are NFA Members Which Are Bound to Mandatory Arbitration …………………………………………………………………....1

        B.      The Pending NFA Arbitration Between NRCM and ADMIS ………………..2

II.     Argument ……………………………………………………………………………3

        A.      Federal Policy Strongly Favors Arbitration ……………………………………………………………………… 3

        B.      The NFA Requires Mandatory Arbitration of Member vs. Member Disputes …………………………………………………………………..4

        C.      Plaintiff and NRCM Have Agreed to Arbitrate This Dispute …………………………………………………………………………..5

            1.      Plaintiff's and NRCM's NFA Member Application Constitutes Their Agreement to Be Bound by the NFA's Rules ………………….5

            2.      Plaintiff, on Behalf of NRCM, Signed a Written Arbitration Agreement …………………………………………………………...6

        D.      The Parties' Dispute is Subject to Arbitration …………………………………….6

            1.      Plaintiff's and NRCM's Agreements to Arbitrate are Valid and Binding ………………………………………………….7

            2.      This Dispute Falls Within the Scope of Plaintiff's and NRCM's Agreements to Arbitrate …………………………………….9

        E.      Dismissal is Proper Because None of Plaintiff's Claims Can Be Litigated ……………………………………………………………..10

III.    Conclusion …………………………………………………………………………...11

i

# TABLE OF AUTHORITIES

**CASES**

*Arciniaga v. Gen. Motors Corp.,* 460 F.3d 231 (2d Cir.2006) ……………………………………4

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) ……………………………………………3

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) …………………………………………....3

*Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91 (S.D.N.Y. 1997) …………………………………...10

*Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.,* 189 F.3d 289 (2d Cir. 1999) ………4

*Collins & Aikman Prods. Co. v. Building Syst., Inc.,* 58 F.3d 16 (2d Cir.1995) ……………………..9, 4

*Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*, 429 F. Supp. 2d 582 (S.D.N.Y. 2006) ……….7

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) …………………………………………….4

*E. Fish Co. v. S. Pac. Shipping Co.*, 105 F. Supp. 2d 234 (S.D.N.Y. 2000) …………………………....10

*Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840 (2d Cir.1987) …………………………………….3

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ………………………………………....3

*Kirschenbaum v. Northwestern University*, 728 N.E.2d 752 (Ill. App. Ct. 1999) ………………………7

*Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322 (S.D.N.Y. 2014) ………………………………...7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353 (1982) ……………………...5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ……………………………..3

*Oscar Production, Inc. v. Zacharius,* 893 F. Supp. 250 (S.D.N.Y. 1995) ……………………...…..8

*R.J. O'Brien & Assoc. v. Pipkin,* 64 F.3d 257 (7th Cir.1995) ……………………………………….8

*Wilson v. Wilson*, 577 N.E.2d 1323 (Ill. App. Ct. 1991) …………………………………………...7

*Wright v. Mr. Quick Inc.*, 486 N.E.2d 908 (Ill. 1985) …………………………………………….7, 8

**STATUTES**

7 U.S.C. §§ 6f(a) ……………………………………………………………………………4

7 U.S.C. §§6k(1) ……………………………………………………………………………4

7 U.S.C. § 21(o) ………………………………………………………………………….4

7 U.S.C. § 21(b)(10) …………………………………………………………………….....5

9 U.S.C. § 2 …………………………………………………………………………....3, 6

9 U.S.C. § 3 ………………………………………………………………………….....3

**OTHER AUTHORITIES**

NFA Bylaws, Rule 301(f) …………………………………………………………....5, 6, 7, 8

NFA Member Arbitration Rule, Section 2(a) ……………………………………………......6

ADM Investor Services, Inc. ("ADMIS") moves to compel arbitration on the basis that: (i) the parties have a binding agreement to arbitrate this dispute and (ii) there is a pending National Futures Association arbitration between the parties relating to the subject matter of this action.

I.   **Facts Relevant to The Parties' Agreement to Arbitrate**

   A.  **The Parties Are NFA Members Which Are Bound To Mandatory Arbitration**

Defendant ADMIS is a member of the National Futures Association ("NFA") and has been an NFA member since 1982.  See Hostetler Declaration, ¶3, attached as Exhibit 1.

Plaintiff became an NFA member in January of 2017.  (Amd. Compl. ¶20). Plaintiff previously owned Nefertiti Risk Capital Management, LLC ("NRCM") which, she alleges, has been dissolved. (Amd. Compl. ¶22.) The NFA's publicly available database, known as BASIC, identifies NRCM as an NFA member from May 23, 2017 to July 20, 2020.  See, Exhibit 2.   Plaintiff's initial Complaint alleged that Plaintiff is the "legal successor and assign" of NRCM. (Compl. ¶20.) Plaintiff's Amended Complaint alleges that she is the "successor in interest to the claim of NRCM" and the "successor-in-interest to all assets, liabilities, and all affairs of NRCM."  (Amd. Compl., ¶¶229; 390.)

When NRCM opened an account at ADMIS, Plaintiff, on NRCM's behalf, signed an arbitration agreement in which it agreed to arbitrate this dispute.  (See, Hostetler Declaration, Ex. 1, ¶4.)

1

### B. The Pending NFA Arbitration Between NRCM and ADMIS

On or about June 15, 2018, NRCM initiated a Member vs. Member NFA arbitration against ADMIS and others pursuant to the NFA's Member Arbitration Rules (the "NRCM Arbitration"). See, Hostetler Declaration, Ex. 1, ¶5. The NFA appointed a three-person panel of arbitrators (the "Arbitration Panel") to hear and decide the NRCM Arbitration.

On November 13, 2019, the Arbitration Panel presiding over the NRCM Arbitration issued an Order allowing Claimant to request a stay of the NRCM Arbitration based on Claimant's accusations against the NFA:

> As stated, the Panel will entertain a request by Claimant to stay these proceedings apparently (in Claimant's view) in order to proceed against the NFA in a U.S. District Court. Such request is entirely within the discretion of the Claimant. The Panel's comment is prompted by Claimant's numerous references to alleged claims against the NFA, with regard to which the Panel has no jurisdiction nor has any view as to the validity of such alleged claims. **However, to be clear, the dispute between the parties being members of the NFA shall remain in this arbitration forum.**

See, Hostetler Aff., Ex. 1, ¶6. (emphasis added). Importantly, the Arbitration Panel confirmed that the dispute between NRCM and ADMIS "shall remain in this arbitration forum."

Shortly thereafter, NRCM moved to stay the NRCM Arbitration, and on November 18, 2019, the Arbitration Panel granted NRCM's request to stay the NRCM Arbitration. See, Hostetler Aff., Ex. 1, ¶7. In the Order granting NRCM's request to stay the NRCM Arbitration, the Arbitration Panel stated,

> effective November 13, 2019, the entire matter including without limitation all pending discovery requests, motions, subpoenas, requirements, deadlines and the like are adjourned and stayed. The matter shall remain inactive until such time as the stay is lifted by this Panel (or its successor) upon good cause shown. This stay shall become permanent if not lifted by November 13, 2020.

See, Hostetler Aff., Ex. 1, ¶7.

On November 12, 2020, Samantha Kumaran filed a motion to extend the stay in the NRCM Arbitration. ADMIS opposed that motion on November 20, 2020. The Arbitration Panel has not

2

ruled on Ms. Kumaran's motion.

**II.     Argument**

    **A.     Federal Policy Strongly Favors Arbitration**

The Federal Arbitration Act ("FAA") was enacted "to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Any arbitration agreement affecting interstate commerce is subject to the terms of the FAA. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Pursuant to the FAA, arbitration agreements are valid and enforceable contracts which are subject to contract law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009); *see also*, 9 U.S.C. § 2 (an agreement in writing to submit an existing controversy to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract."). Where a party brings suit in federal court which is referable to arbitration, the FAA requires the federal court to stay the action. 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.").

The FAA was designed to promote arbitration, and embraces a "liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-346 (2011); *see also, Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987)(the FAA is "a Congressional declaration of a liberal federal policy favoring arbitration agreements"). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district

3

courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The Second Circuit has been steadfast in its approach to the arbitrability of disputes, noting "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied." *Arciniaga v. Gen. Motors Corp.,* 460 F.3d 231, 234 (2d Cir.2006). Accordingly, courts construe arbitration clauses as broadly as possible. *Collins & Aikman Prods. Co. v. Building Sys., Inc.,* 58 F.3d 16, 19 (2d Cir.1995). Indeed, even where ambiguity exists as to the scope of the arbitration provisions, courts must resolve any doubts in favor of arbitration. *Chelsea Square Textiles,* 189 F.3d at 294 (*quoting Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25, 103 S.Ct. 927)("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Therefore, courts will compel arbitration unless they have a "positive assurance" that the dispute falls outside of the scope of the arbitration provision. *Collins & Aikman Prods. Co. v. Building Syst., Inc.,* 58 F.3d 16, 19 (2d Cir.1995).

### B. The NFA Requires Mandatory Arbitration of Member vs. Member Disputes

The Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1 *et seq.*, regulates the conduct of participants in transactions involving commodity futures. The CEA requires participants in the industry (such as futures commission merchants, introducing brokers, and persons associated therewith) to register under the CEA. *See*, 7 U.S.C. §§ 6f(a) and 6k(1). Congress created the Commodity Futures Trading Commission ("CFTC") as an independent agency to oversee the regulatory scheme and to register persons under the CEA. The CEA permits the CFTC to delegate its registration function to a registered futures association to be performed in accordance with the association's rules. 7 U.S.C. § 21(o). The CFTC has delegated the registration function to the NFA.

The CEA requires registered futures associations such as the NFA to "provide a fair, equitable, and expeditious procedure through arbitration or otherwise for the settlement of

4

customers' claims and grievances against any member" of the association. 7 U.S.C. § 21(b)(10). The NFA is a statutorily-authorized self-regulatory organization for the futures industry. S*ee Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 365 n. 28, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). In accordance with the CEA, the NFA has established a Code of Arbitration and Member Arbitration Rules which, like all NFA rules, are subject to CFTC approval.

The NFA's Member Arbitration Rules are available on the NFA's website: www.nfa.futures.org/rulebook/rules.aspx?Section=6. As discussed below, Section 2 of the Member Arbitration Rules imposes the mandatory arbitration of Member vs. Member disputes.

### C. Plaintiff and NRCM Have Agreed to Arbitrate This Dispute

#### 1. Plaintiff's and NRCM's NFA Member Applications Constitute Their Agreement to Be Bound by the NFA's Rules

The NFA is a membership organization. Both Kumaran and NRCM, as Members of the NFA during the relevant period, are subject to its rules. Indeed, as a condition of their NFA membership, Kumaran and NRCM have contractually agreed to, and are, bound by the NFA's bylaws and rules. The NFA bylaws mandate that an application for membership constitutes an agreement to be bound by, *inter alia,* the NFA Code of Arbitration and Member Arbitration Rules:

> (ii) The electronic filing of the application or verification of the information contained in the application shall constitute:
>
> * * *
>
> (C) an express agreement by the applicant that, whenever admitted to NFA membership or registered as an Associate, the applicant and its employees shall become and remain bound by all NFA requirements, including . . .**Code of Arbitration and Member Arbitration Rules** as then and thereafter in effect and that such agreement shall apply each time the applicant becomes a Member or Associate.

NFA Rule 301(f)(ii)(C)(emphasis added).

5

In their applications to become NFA Members, Plaintiff and NRCM, like all NFA Members, agreed to "become and remain bound by all NFA requirements, including without limitation all applicable NFA Bylaws . . . **Code of Arbitration and Member Arbitration Rules** as then and thereafter in effect." *See*, NFA Bylaws, Rule 301(f)(emphasis added).

One of the Member Arbitration Rules to which Plaintiff and NRCM expressly agreed to abide is the mandatory arbitration provision set forth in Section 2 of those Rules. Section 2 (entitled "Arbitrable Disputes") provides, "disputes between and among Members shall be arbitrated under these rules" unless certain circumstances (not applicable here) are present. *See,* NFA Member Arbitration Rules, Section 2(a). Section 2(a) of the Member Arbitration Rules constitutes a valid contract between ADMIS, all other NFA Members, and the NFA itself. Accordingly, Plaintiff cannot be permitted to pursue her claims against NFA Members such as ADMIS through litigation in court. *See,* 9 U.S.C. § 2.

        2.        **Plaintiff, on Behalf of NRCM, Signed a Written Arbitration Agreement**

In addition to being bound to NFA arbitration as an NFA Member, Plaintiff, on behalf of NRCM, signed a written agreement to arbitrate with ADMIS. See, Hostetler Declaration, Ex. 1, ¶4. The arbitration agreement provides that any controversy between ADMIS on the one hand, and its Customer on the other, arising out of or related to the Customer's account "shall" be settled only by arbitration in accordance with the rules of the NFA, the CFTC, or the exchange upon which the transaction complained of was executed. *Id.* Plaintiff claims to be the successor to NRCM's claims and is therefore bound by NRCM's agreement to arbitrate those claims. Thus, in addition to Section 2 of the Member Arbitration Rules, the written arbitration agreement prohibits Plaintiff from proceeding in this forum.

        D.        **The Parties' Dispute is Subject to Arbitration**

To determine whether a dispute is subject to arbitration, courts in the Second Circuit

consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 327 (S.D.N.Y. 2014) (quoting *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). Each consideration is addressed below.

### 1. Plaintiff's and NRCM's Agreements to Arbitrate are Valid and Binding

Plaintiff and NRCM made two separate agreements to arbitrate this dispute: (i) their agreement as NFA Members, and (ii) their written agreement to arbitrate that they signed in connection with the opening of the NRCM client account at ADMIS. Each is discussed below.

In determining whether parties entered into a valid agreement to arbitrate, courts look to the applicable state law governing the formation of contracts generally. Both Illinois and New York law permit parties to a contract to incorporate by reference terms appearing in a separate document. *See Wright v. Mr. Quick Inc.*, 486 N.E.2d 908, 910 (Ill. 1985) ("It is well established that one instrument can incorporate the terms of another," where "[a]ll that is required is an expression of the parties' intent to incorporate those terms."); *Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*, 429 F. Supp. 2d 582, 602 (S.D.N.Y. 2006) (applying New York law and finding that "a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it"). When terms are incorporated into the parties' main contract, those terms are as much a part of the parties' contract as if they had been expressly set forth in the main contract. *See Wilson v. Wilson*, 577 N.E.2d 1323, 1329 (Ill. App. Ct. 1991); *Creative Waste Mgmt.*, 429 F. Supp. 2d at 602; *see also Kirschenbaum*, 728 N.E.2d at 762 ("Contracts which specifically incorporate other documents by reference are to be construed as a whole with those other documents.").

The NFA Bylaws mandate that an application for membership constitutes an agreement to be bound by, *inter alia,* the Member Arbitration Rules. NFA Rule 301(f)(emphasis added). In their

7

applications to become NFA members, Plaintiff and NRCM agreed to "become and remain bound by all NFA requirements, including without limitation all applicable NFA Bylaws . . . **and Member Arbitration Rules** as then and thereafter in effect. *See*, NFA Bylaws, Rule 301(f)(emphasis added). Because the NFA Bylaws expressly reference the Member Arbitration Rules, those rules are made part of Plaintiff's agreement with the NFA, and by extension, with all other NFA members. *See Wright*, 486 N.E.2d at 910 (finding that incorporation by reference requires only that the main document express the parties' intention that the additional terms be incorporated).

The Seventh Circuit has specifically held that a petitioner who registered as an associate member of the NFA consented to arbitrate all disputes with other members or associates pursuant to the NFA Member Arbitration Rules that had been incorporated in his registration. *See R.J. O'Brien & Assoc. v. Pipkin,* 64 F.3d 257, 260–261 (7th Cir.1995). Like *Pipkin,* Plaintiff and NRCM registered as NFA members and thereby consented to arbitrate all disputes with ADMIS pursuant to the NFA's Member Arbitration Rules.

In addition, NRCM's written arbitration agreement is valid and binding. When NRCM applied to open an account at ADMIS, Plaintiff, on behalf of NRCM, signed a written arbitration agreement with ADMIS. All of the elements of a valid and enforceable contract are present: ADMIS offered Plaintiff and NRCM the opportunity to arbitrate disputes relating to NRCM's account in lieu of litigation in court; Plaintiff and NRCM accepted that offer as evidenced by Plaintiff's electronic signature on the written arbitration agreement; and the parties' mutual promises to arbitrate serve as consideration for the agreement. *See, Oscar Production, Inc. v. Zacharius,* 893 F. Supp. 250, 255 (S.D.N.Y. 1995) (general requisites for formation of contract are offer, acceptance and consideration.) Notably, Plaintiff and NRCM were not obligated to sign the arbitration agreement and could have opened the account at ADMIS without agreeing to arbitrate any disputes with ADMIS. Thus, the arbitration agreement was not a contract of adhesion.

### 2. This Dispute Falls Within The Scope of Plaintiff's and NRCM's Agreements to Arbitrate

Plaintiff's (and NRCM's) claims against ADMIS fall within the broad scope of Section 2 of the Member Arbitration Rules. Section 2 of the Member Arbitration Rules provides "disputes between and among Members shall be arbitrated under these Rules" unless certain circumstances (not applicable here) are present. Section 2 governing "claims between members" places no subject matter limitation to the requirement to arbitrate disputes between members. Given the mandate that courts "construe arbitration clauses as broadly as possible" and to resolve any doubts about their scope in favor of arbitration, there is no question that this dispute falls within the scope of Section 2 of the Member Arbitration Rules. *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). Indeed, courts must find in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

The arbitration provision that applies to Plaintiff and NRCM broadly requires them to submit whatever "disputes" they may have with ADMIS to binding arbitration. Thus, the pending dispute must be resolved in arbitration. Consistent with that obligation, the Arbitration Panel has already ruled that the dispute between NRCM and ADMIS is properly in NFA arbitration:

> As stated, the Panel will entertain a request by Claimant to stay these proceedings apparently (in Claimant's view) in order to proceed against the NFA in a U.S. District Court. Such a request is entirely within the discretion of the Claimant. The Panel's comment is prompted by Claimant's numerous references to alleged claims against the NFA, with regard to which the Panel has no jurisdiction nor has any view as to the validity of such alleged claims. **However, to be clear, the dispute between the parties being members of the NFA shall remain in this arbitration forum.**

See, Hostetler Aff., Ex. 1, ¶6 (emphasis added).

In addition, the arbitration agreement between ADMIS and NRCM requires the arbitration of any dispute arising out of or related to the Customer's account. That written arbitration agreement expressly provides,

9

> Any controversy between ADM Investor Services, Inc. ("ADMIS") or its employees, agents, representatives, affiliated brokers, or associated persons, on the one hand, and Customer, on the other hand, arising out of or related to Customer's account, or to this agreement or the breach thereof, shall be settled only by arbitration in accordance with the rules of National Futures Association, the Commodity Futures Trading Commission, or the exchange upon which the transaction complained of was executed, as Customer may elect.

See, Hostetler Declaration, Ex. 1, ¶4.

Here, Plaintiff has alleged throughout the Amended Complaint—as she must—that all of the claims arise out of NRCM accounts with ADMIS. Indeed, all of the claims Plaintiff asserts arise out of ADMIS' alleged misuse of NRCM's account information and trading information. For example, in Paragraph 8 of the Amended Complaint Plaintiff alleges: "ADMIS deceived and betrayed hundreds of its customers and CTA's by secretively giving Vision's owners, employees and affiliates unlawful access to their confidential trading accounts, and trade secrets, and disseminating their confidential and proprietary trading strategies to their competitors." All of Plaintiff's claims arise of out Plaintiff's and NRCM's relationship as an ADMIS customer and allege ADMIS's misuse of information related to NRCM's ADMIS accounts. Accordingly, the claims set forth in Plaintiff's Amended Complaint fall within the scope of the written agreement to arbitrate.

### E. Dismissal Is Proper Because None of Plaintiff's Claims Can Be Litigated

Because this dispute does not belong in federal court the Court has the discretion to dismiss Plaintiff's Amended Complaint. Although § 3 of the FAA requires a federal court to stay an action to resolve a dispute subject to an arbitration agreement, courts have the discretion to dismiss—rather than stay—an action when all of the issues in it must be arbitrated. *E. Fish Co. v. S. Pac. Shipping Co.*, 105 F. Supp. 2d 234, 241 n.10 (S.D.N.Y. 2000); *Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 96 (S.D.N.Y. 1997). In this case, the parties' agreements to arbitrate encompass all of the issues Plaintiff raised in Plaintiff's Amended Complaint, and there is already an arbitration pending between NRCM and ADMIS. Accordingly, ADMIS requests that the Court exercise its discretion

and dismiss this action in its entirety based on the pending arbitration between the parties.

### III. CONCLUSION

For the foregoing reasons, ADM Investor Services, Inc. requests that the Court compel the parties to arbitration before the National Futures Association, and exercise its discretion to dismiss Plaintiff's Amended Complaint based on the pending arbitration between the parties.

Dated: December 1, 2020

                                                          Respectfully submitted,

                                                          ADM INVESTOR SERVICES, INC.

                                          By:    /s/ Daryl M. Schumacher

Daryl M. Schumacher (Il Bar No. 6244815)
Kopecky Schumacher Rosenburg LLC
120 N. LaSalle Street, Suite 2000
Chicago, IL 60602
(312) 380-6556
dschumacher@ksrlaw.com

*Admitted Pro Hac Vice*

*Counsel for Defendant ADM Investor Services, Inc.*