**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SAMANTHA SIVA KUMARAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:20-cv-03873-GHW-SDA |
| | ) | |
| ADM INVESTOR SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF DARYL M. SCHUMACHER IN**
**SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATOIN**

DARYL M. SCHUMACHER, declares and states as follows:

1.      I am an attorney with offices at 120 N. LaSalle Street, Suite 2000, Chicago, IL 60602.
I am admitted to practice law in the State of Illinois, the Northern District of Illinois, and *pro hac vice*
in this case.

2.      Attached hereto is a true and correct copy of a Motion to Extend Stay which Ms.
Kumaran provided to ADMIS on November 12, 2020.

3.      I declare under penalty of perjury that the foregoing is true to the best of my
knowledge, information and belief.

Dated:  April 19, 2021

Respectfully submitted,

/s/ Daryl M. Schumacher

Daryl M. Schumacher (IL Bar No. 6244815)
Kopecky Schumacher Rosenburg LLC

1

120 N. LaSalle Street, Suite 2000
Chicago, IL 60602
(312) 380-6556
dschumacher@ksrlaw.com

*Admitted Pro Hac Vice*
*Counsel for Defendant ADM Investor Services, Inc.*

Motion to Extend Stay, Page 1                                    November 12, 2020

## IN ARBITRATION BEFORE THE

## NATIONAL FUTURES ASSOCIATION

IN THE MATTER OF ARBITRATION BETWEEN

| | |
|---|---|
| Samantha Siva Kumaran  (Successor) | ) |
| Nefertiti Risk Capital Management ("NRCM")   *dissolved | ) |
| Claimant, | ) |
| | ) |
| v. | ) |
| | )    NFA Case No. 18-ARB-5 |
| | )    MOTION TO EXTEND STAY |
| ADM Investor Services, Inc, Greg Hostetler, | ) |
| Lazzara Consulting, Inc, Trey Lazzara, | ) |
| High Ridge Futures, LLC, John Felag, Josh Herritt, | ) |
| Howard Rothman, Robert Boshnack | ) |
| | ) |
| Collectively, Respondents, | ) |

## MOTION AND MEMORANDUM TO EXTEND STAY AT ARBITRATION PENDING RESOLUTION OF COURT PROCEEDINGS

Pursuant to Order 17 dated November 19 2019 this Panel issued a stay of this Arbitration 18-ARB-5 for twelve months until November 13, 2020 pending jurisdiction of related proceedings against the National Futures Association ("NFA") pursuant to CEA Section 22.

Claimant through its successor respectfully requests ORDER 17 is modified to state

a) The Stay is extended pending resolution of related matters 20-CV-03668, 20-CV-03871 and 20-CV-03873 in District Court in the Southern District of New York and:

b) The statute of limitation is tolled to the date of filing and notice of initiation of this Complaint.

The request is consistent with the law in this District and all other districts as outlined in this motion hereunder, staying one action pending for resolution of the other.

In the alternative, if the stay is not extended above Claimant through its successor moves to remove the stay, to preserve any rights for its' timely filed claims, for the sole purpose of  disputing

the arbitrability of these claims, and removing the arbitration due to the material conflicts of interest in NFA's administration under the Federal Arbitration Act, and the failure to make requisite disclosures under the FAA. Thereunder Claimant[s] request the subpoenas already issued to the NFA are required to be produced. To prosecute these claims, Claimant[s} are entitled to a neutral forum, and all documents pertaining to conflicts of interest need to be reviewed.

## **Background**

On or around November 13, 2019. The Panel in Order 13 ruled that it has no jurisdiction over the NFA. Under the Commodities Exchange Act Section 22 (7 USC 25(a) and (b) el seq) jurisdiction over the NFA lies solely in District Court. In accordance with the statutes, and the stay granted by the Panel, Plaintiff filed its claims against the NFA on or around May 8, 2020 in SDNY under file number 20-CV-03668. The case is currently pending for the Court's resolution of the validity of this Arbitration and material conflicts of interest that have been cited in the NFA's ability to oversee the proceeding, as well as their obligations of disclosures. Concurrently, proceedings have been initiated also in Southern District against ADM Investor Securities (Case 20-CV-3873) and Vision Financial Markets (20-CV-3871).

In addition, as a result of the fraud perpetrated by ADMIS, Vision and its co-conspirators, and the extensive delays to effectuate fast, efficient and equitable process, and conflicts of interest in this proceeding NRCM has been dissolved. A copy of the dissolution certification is attached. Kumaran is therefore the successor in interest to NRCM.

On or around October 6, 2020, (*See ECF33* and *ECF34 20-CV-03668*) District Court ruled that Plaintiffs can file their motion for injunctive or declaratory relief among other claims, citing material conflicts of interest in the NFA's role in administering this arbitration, disclosures required to assess and  compliance with the Federal Arbitration Act (FAA 9 U.S.C. 1 *el seq*) and other alleged violation under the Commodities Exchange Act CEA Section 22, for which this Panel ruled that it has no jurisdiction. The Court action is pending in District Court with amended complaint due by December 24, 2020.

Given that jurisdiction of the FAA lies before the Court, Claimant[s] request that this proceeding is stayed, pending conclusion of that motion and the Court's ruling is consistent with the case law (see legal argument below) and so as not to prejudice Claimant's rights in and to its timely filed claims.  The law in this district and other districts, is that one proceeding is stayed pending resolution of another, so as to avoid prejudice to any parties rights. Claimants have asserted a material conflict of interest in the NFA overseeing further this proceeding.  Claimant is entitled to full disclosures prior to proceeding with this arbitration. All conflicts of interests need to be fully disclosed. Therefore in the alternative, Claimant[s] seek to preserve its rights if the Panel does not extend the stay, and seeks the Panels review of the NFA's conflicts of interests and issuance of the subpoenas on the NFA. The NFA materially failed to disclose their conflicts  - rendering their role in the administration of the arbitration void due to evident partiality and failure in disclosure.

## SUMMARY OF FACTS OF THE CASE

This case stems to the heart of the Commodities Exchange Act ("CEA"), and the actions and failures to enforce the rules by the NFA, in permitting owners and employees of the disbarred entity Vision Financial Markets, LLC to commit numerous tortious acts on their competitor CTA's accounts and then engage in direct competition in express violation of CFTC rules, while – propagating fraud, deceit and misrepresentation. The Conspirators in this case, ADMIS, Vision affiliates and the IB's unlawfully permitted Vision to obtain its competitors CTA's transaction records, to deplete their CTA trading profits, by withdrawing unauthorized fees from their account, and other acts of tampering with margin in violation of the exchange rules, all without the customers and CTA's knowledge and consent.

Vision were effectively disbarred for over $1.5 million of customer losses in options trading and subject to numerous disciplinary violations and over 172 CFTC reparations cases against them. Vision have subsequently set up directly competing options trading CTA, called VIA and other Vision trading arms (which was not part of the original complaint to this Panel, which directly competes with Claimants' STORM options trading program) and continue to operate a directly competing CTA referral service, called HRF CTA referral services.

Because of the fraud, tampering and other tortious conduct and fraud perpetrated on Claimant, NRCM was dissolved in September 2020. The conspirators actions were to cause significant financial

harm, as well as deplete their competitors' advantage to gain an unfair competitive advantage. Further they not only obtained their competitors trading programs (ex

The rules not just of the NFA, but also at the heart of the Commodities Exchange Act, is that participants are required "*to observe high standards of commercial honor and just and equitable principles of trade in the conduct of their commodity futures business and swaps business*". (See 2-4) No such conduct was observed in this case.  The CEA, amongst numerous other laws, prohibits CTA's trading strategies being disseminated to other member without their express consent and knowledge. NFA Rules also expressly prohibit obtaining another CTA's transactions records without their consent (See 2-4/Int 9065). Multiple CFTC rules require that ADMIS and Lazzara disclose any material relationships, including but not limited to those related to fees, and risk management prior to Claimant[s] opening the account. (See CFTC 1.11, CFTC 1.55). An the overarching theme in this case is of fraud – and deliberate misrepresentation by Lazzara, ADMIS and also Felag, Boshnack and Rothman who had duties to disclose the facts.

Claimant[s] pled a detailed case, meeting the heightened pleading standards of Fed.R.Civ.Proc 9(b), replete with dates, times, speakers and specifics where Lazzara, Felag and others, including ADMIS, perpetrated a fraud, repeatedly and persistently concealed from Claimant[s] that the former employees and owners of a disbarred entity, Vision Financial Markets, LLC (who also run affiliates that are direct CTA competitors) would unlawfully obtain trading strategies from its proprietary options trading CTA account, deduct trailing commissions and unauthorized fees, reduce profitability of Claimant[s] directly competing options trading account,  and unlawfully tamper with and manipulate margin on their competitors account to force losses. The conduct of ADMIS to disseminate CTA's accounts without their knowledge and consent is not just fraud, and prohibited under the NFA Rules, but also constitute anti-trust activity. ADMIS unlawfully used its position as FCM, to disseminate CTA's accounts to directly competing CTAs at Vision to give them an unfair competitive advantage.

This also speaks to the heart of the case of "fair competition .. of market participants" and violation of the Act. **The Commodities Exchange Act, 7 U.S. Code Chapter 1, § 5** provides that (a) The transactions subject to this chapter are entered into regularly in interstate and international commerce and **are affected with a national public interest by providing a means for managing**

**and assuming price risks**, discovering prices, or disseminating pricing information through trading in liquid, fair and financially secure trading facilities.  (b) Purpose:  It is the purpose of this chapter to serve the public interests described in subsection (a) through a system of effective self-regulation of trading facilities, clearing systems, market participants and market professionals under the oversight of the Commission. To foster these public interests, it is further the purpose of this chapter to deter and prevent price manipulation or any other disruptions to market integrity; to ensure the financial integrity of all transactions subject to this chapter and the avoidance of systemic risk; **to protect all market participants from fraudulent or other abusive sales practices and misuses of customer assets;** and to promote responsible innovation and **fair competition** among boards of trade, other markets and **market participants**.

ADMIS, Vision and Lazzara's primary defense in this case has been that the NFA were participants in the scheme, knew about the conduct and willfully failed to enforce their rules. Public documents show that when Vision was disbarred in 2014 (before Claimant even came into existence), NFA entered into settlements agreements with Vision and its owners Boshnack, Rothman and procuring financial benefits of $2 million dollars, under which NFA agreed to permit Boshnack and Rothman to remain in the business and start various new affiliates, subject to various "fitness exams" and obligations that they would not harm other market participants. NFA's signatures on those documents requires compliance with the CEA.

 Those agreements from which NFA had pecuniary benefits, are now alleged to have violated the Commodities Exchange Act,  and permit Co-Conspirators to fraudulently conceal from customers and CTA's that Boshnack, Rothman and other entities would not only receive "trailing commissions" from their competitors accounts without their knowledge and consent, they would gain unauthorized CTA's proprietary trading account to affiliates of Vision (including Claimant[s]), they would engage in unauthorized margin and risk activities, without the knowledge and consent from the CTA's, and as not permitted by the CFTC Rules,  as well as violate numerous other CFTC rules for disclosure and privacy laws. The conduct is also in express violation of the CEA and the NFA condoned illegal conduct to conceal ongoing operations that violated privacy laws.

Further, all Respondents and the NFA knew that Vision affiliates had directly competing CTA businesses and material conflicts of interest. The scheme, not only benefitted the NFA from the $2

million dollars it received in the settlement to buy themselves back into the markets, but as alleged in the Complaint and papers filed in Court, generated over $10 million dollars a year in unauthorized revenue in overcharges, fees and profit deductions to pay Boshnack and Rothman. At the time of filing the Complaint the scheme is expected to have generated over $50 million dollars for the co-conspirators including the NFA – giving them a direct pecuniary interest. Their signatures authorizing the conduct also invokes direct liability for the NFA. This provides substantial pecuniary interests for why there is material bias and against Claimant[s] in this proceeding. NFA's influence in this proceeding is materially conflicted as ADMIS have clearly invoked that NFA is a party to the agreements and fraudulent scheme.

The scheme makes substantial revenue to all conspirators, including the NFA. However, the unauthorized fees are not disclosed to the customer – nor are the recipients being Vision owners disclosed. It is black letter law under the CFTC Rules and CEA, that all fees must be disclosed prior to opening the account, as well as any information that could be deemed misleading.  Claimant[s] had a right to know this information, not just prior to opening its account, but at all times during the life of the account. The facts of this case continue, that, after being fraudulently induced to open the accounts at ADMIS in January 2017, for the period thereafter between February 2017 – June 2017 when Claimant[s] continued to question and demand answers on a multiple errors and omissions, citing gross negligence in the risk department, those questions were not answered truthfully. Instead, continuing to violate the Commodities Exchange Act, and the express requirements of "fair play" – Lazzara, the independent broker, with independent ethical duties to Claimant[s], and his other customers and CTA's continued to lie and mislead – stating he was speaking to "a division of ADM" and that "there was a dev team" and a "tech team" – and "John from risk" was "his guy at ADM" and others falsehoods.

The repeated dishonesty expressly violates the CEA, prohibiting members to in any manner cheat, deceive and defraud others. (See NFA 2-2, See CEA Section 4b, 7 U.S. Code § 6b (2) which expressly prohibits conduct and states it is expressly prohibited (A)  to cheat or defraud or attempt to cheat or defraud the other person. Respondents knew Claimant[s] was a start-up CTA was a "newcomer", had directly competing "options trading strategies", and was on the cusp of launching a directly competing commodities options hedge fund, and were keenly interested in the improper

access to the confidential and proprietary data, and with intent to deceive hoped they would never find out and with directly competing businesses. Notably through repeated statements by Lazzara, also a beneficiary of the fraudulent scheme who obtains an interest-free credit line from Rothman, Boshnack, Trey Lazzara, collectively, willfully and wantonly continued to not just conceal, but willfully make misstatements, defraud and conceal that the rogue risk department was not actually ADMIS.

Using metaphors, acronyms and other cryptic terminology, ADMIS and Lazzara during the life of the account, in bad faith, covered up there was a secret, rogue and unauthorized operation in Stamford CT being operated by former employees of a disbarred entity called Vision. As stated in the Complaint in 20-CV-03873 and 20-CV-03871 the unauthorized risk management services were not only unnecessary, they prohibited by rule, law and regulation and were replete with errors and omissions and gross negligence, and in violation of exchange rule compliance. Claimant[s] have demonstrated by way of multiple exhibits, that they services were performed by unqualified and grossly negligent individuals, and errors of magnitude greater than with wanton disregard for their obligations by the illegal and fraudulently concealed risk management group. The Complaint lists in detail material errors and omissions and errors in calculations and unauthorized outsourcing of material risk to Vision that violated CME Rule 930, CME Rule 982,  CFTC 1.11-1.15.  CFTC 1.55 in violation of CEA and breach of CME rules. The errors and omissions and gross negligence in the unauthorized and unnecessary risk services, fell far beyond and outside the duties of reasonable care, and constituted a wanton, reckless and willful disregard of customers, traders, and Claimants' property, assets, funds and proprietary information.

Nonetheless Claimant[s] had a right to know, not just *prior* to the account opening, but during the life of the account, when it questioned the errors, and large margin swings and intraday margin policy, who was manipulating the margin, and who was at the helm of decision making. Claimant[s] under the CFTC rules had a right to know also *prior* to the account opening and to full disclosures under the CFTC Rules.

It is an express violation not just of the anti-fraud law, but also the CFTC rules, that ADMIS and Lazzara needed to disclose this so-called outsourcing of risk to Vision, *prior* to opening the account. They did not. That is fraud and Claimant[s] have alleged fraudulently inducement - rendering

the entire ADMIS contract procured by fraud and therefore rescinded. Therefore Claimant[s] are seeking **recission of the entire ADMIS agreement** – a remedy it is entitled to - as it was procured by fraud.

The Panel should also note, that having spoken to CFTC director  Ms. Gonzales responsible for approving any risk services under the Risk Management Program ("RMP") which is mandated under CFTC 1.11 had no knowledge of any legitimate or approved outsourcing of risk to High Ridge under the RMP by ADMIS. Therefore ADMIS (and other Respondents) who were represented by the conflicts Kopecky Schumacher – may have made false statements to the Panel, and not even have had any authorized risk management contract between Respondents – and such statements to the Panel in this proceeding may have been unsupported by facts and false. Notably the Panel ordered ADMIS to produce its agreements related to risk management with High Ridge by Order 9 dated October 10, 2019.

Specifically the Panel ordered Respondents in Order 9 to produce documents as follows:

> *All agreements, transcripts of recordings, memoranda and notes, and <u>phone logs</u>, between ADMIS and High Ridge Futures <u>relating to risk management</u>, guarantees, <u>administrations</u>, fee sharing arrangements concerning Claimant.*

Instead ADMIS and Respondents disregarded the Order, the only single document produced was a heavily redacted "Guarantee and Fee Agreement" which contained no provision for so-called risk management services, and gave no authorization whatsoever for ADMIS to distribute confidential and proprietary CTA accounts to High Ridge. ADMIS were supposed to produce that document under 7(a)(2) on October 5, 2018 (note year) and therefore without penalty, consequence and failure to enforce. Claimant[s] still have motions for sanctions for this conduct outstanding of over $12,100. Even in defiance of Panel orders, ADMIS and High Ridge parties failed to produce any authorized risk management agreements. The Panel should also note that on October 12, 2018, in Respondents first answer to the Complaint, Kopecky-Schumacher, counsel for all Respondents, made statements to the Panel (*See* Respondents Supplemental Answer October 12 2018 at Pg. 6) that " *In accordance with its Privacy Policy, and the arrangement between ADMIS and High Ridge <u>regarding the administration of customer accounts</u> of Introducing Brokers introduced to ADMIS by High Ridge, ADMIS shared the trading activity in Claimant's accounts with High Ridge. The information was*

*shared by ADMIS in order to allow High Ridge to perform <u>certain risk management services</u> with regard to Claimant's accounts."*

Yet as this proceeding continued to fail in enforcing its rules, and in complete disregard for Panel Order 9, dated on or around October 9, 2019, ADMIS and Respondents and Kopecky-Schumacher either willfully defied the Order to produce any evidence of any "*risk management service*" agreements or "*administrative*" agreements – or the more likely scenario no such risk service agreements are believed to even exist. Consistent with the statements made by Ms. Gonzales at the CFTC that no such bona-fide risk services agreements are authorized, and none are approved in the RMP or in compliance with the Commodities Exchange Act – none could be produced. This was not just in violation of Panel orders, (for which ADMIS received repeated lenience and no penalty of sanctions) the failure to produce documents, that could expose NFA participation is further evidence of fraud and bias in this forum – rendering the NFA forum completely improper for further resolution of this claims. Respondents also deliberately failed to produce any phone logs, or other administrative agreements. Again NFA failed to enforce any penalties for violation of its rules in prejudice to Claimant[s].

The failure to produce one document of a bona-fide risk services agreement, approved by the CFTC demonstrates the extent of the violations of the Commodities Exchange Act, for which all parties are liable. It is expressly stated in the NFA's own rules, that under NFA 2-26 a violation of the CFTC 1.11 and as well CFTC 1.55 shall be deemed a violation of the NFA's rules To the extent the NFA failed to enforce its rules, including but not limited to NFA 2-26 and the requirements to enforce CFTC regulations thereunder, that provides Claimant[s] a legitimate cause of action against the NFA under Section 22 of the CEA. And that provides material grounds where this Arbitration, given the NFA's own liability and participation in this scheme cannot continue.

Since the matter is now before the District Court (which has sole jurisdiction against the NFA) is exclusively in the Court, Claimant argues it is a material conflict of interests to have the NFA oversee and play a role in this proceeding until resolution of that matter has been concluded before the Courts. As outlined herein the case law supports one proceeding being stayed pending conclusion or resolution of the other and therefore to avoid any clear and evident partiality, Claimant(s) therefore move to stay this proceeding until resolution of the Court proceedings.

Motion to Extend Stay, Page 10                                    November 12, 2020

### Request to Stay Pending Resolution in the Courts

Claimant[s] seek to preserve its rights and are entitled to a fair, unbiased and neutral proceedings. Until the jurisdictional and Court proceedings are concluded an extension to the stay is requested so as not to cause manifest injustice or to prejudice Claimant[s] from its claims that were timely filed that may or may not be preserved in Court.

The request to extend this stay, is consistent with all other rulings to stay one proceeding pending outcome of the other, and to permitted the District Courts to properly adjudicate the conflict would be manifestly unjust and violated the intent of the Arbitration Act. Finally Claimants filed its complaints timely, in accordance with NFA Rules, and therefore this proceeding should be tolled to the timely filed date in accordance with NFA Rules of the Notice of Intent of this proceeding, so as not to prejudice Claimant[s] in this proceeding.

As described in detail herein, no ruling by the Arbitration should arbitrarily prejudice Claimant[s] rights to its timely filed Complaint. If the Panel does not extend the stay, it would be a "final" determination to prejudice Claimant's rights. Any final determination to prejudice Claimant[s] rights would also be appealable as stated prior for bias, evident partiality and prejudice in this forum due to the NFA's participation in this action

Therefore until the conclusion of that conflict is subject to the jurisdiction of the Courts, and the matter is proceeding before Southern District, this proceeding consistent with the law and legal argument below should be stayed. For these reasons, and others presented before the Courts under 20-CV-03668 and the related cases, 20-CV-03871 and 20-CV-03873 all legal arguments are included by reference herein.

The Complaints allege that collectively ADMIS, NFA and Vision are working together to prejudice Claimant[s] rights and therefore Claimant[s] any ruling is made with transparency so as not to arbitrarily. Claimant[s] will reserve their rights to overturn or appeal any ruling that is manifestly unjust or as provided for in the provisions of the FAA, for evident partiality, bias and fraud to attempt to cut Claimants' rights short and arbitrarily terminate Claimant[s] rights to a fundamentally fair proceeding. Claimant[s] seeks the relief sought to preserve its timely filed claims and rights and to prevent manifest injustice.

Claimants extensions would not only preserve the rights but also, as required under law, toll the statute to the date of the timely filed claims.

### Arguing In the Alternative

In the alternative, if the Panel does not extend the stay, for showing of good cause, in accordance with the Order 17, Claimant[s], so as to preserve its rights, respectfully seeks to reactive the proceeding and issue the subpoenas against the NFA so that the conflicts of interest can be addressed in this forum. Under the FAA that the NFA are and continue to be obligated to disclose all documents including the names of the parties and compliance officers, as well as the documents that disclose their signatures on the documents approving this conduct with ADMIS and Vision affiliates that violates the CEA. These disclosures are mandatory prior to any progress of the NFA's involvement, given that they are Co-Defendants in another forum. As stated herein, Claimant[s] therefore respectfully request NFA comply with the outstanding subpoenas so that full transparency into the conflicts of interest, as required under the FAA is disclosed.

Included below is further legal argument supporting this motion here.

Thank you for your consideration.

Respectfully submitted.

//SSK//

Samantha Siva Kumaran

*Successor in Interest from dissolved NRCM

### LEGAL ARGUMENT

(I)    The Timeline For the Stay is Arbitrary of Twelve Months, and Typically Stays are granted pending resolution in one district.

The issue that is before the Panel, is that the date of expiration of the stay on November 13, 2020 which was made prior to the filing of the District Court cases. The date is therefore arbitrary and does not permit a resolution of the very conflicts of interest and issues being raised in arbitrability as well

as NFA's role, that are concurrently before the Court. The date was randomly selected, and was prior to the filing of the claims in the Southern District. It is also not consistent with the law of many districts, that typically grant stays pending outcome of another parallel proceeding. Courts in New York, typically grants stays from one proceeding over another, until resolution of that proceeding and lean against duplicative proceedings being engaged concurrently.

Claimant (thought its successor) argues that any early termination of the stay would materially prejudice of harm, to preserve its rights for its timely filed Complaint. In Order 17 the Panel provided an "finite" end to the stay on November 13, 2020 – though there is no statutory precedent for why one proceeding would be stayed only for twelve months - instead of pending resolution in the District Courts. As supported by law herein, typically one proceeding is stayed, pending resolution of the other. Now that the actions are proceeding (as indicated above in SDNY) Claimant again first argue that in accordance with the case law this proceeding should be stayed pending resolution of those actions.

Any early termination of Claimants rights by not extending the stay would be materially prejudicial and harmful to Claimants in their timely filed action.

Until the conflicts of interest are resolved, and given the NFA are now parties to this action, and alleged to be liable, the FAA is clear that they should not be permitted to continue to administer the case. As the United States Supreme Court has held, the "provisions of [Section 10 of the FAA] show a desire of Congress to provide not merely for any arbitration but for an impartial one" (*Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 147, 89 S.Ct. 337, 21 L.Ed.2d 301 [1968] ). In *Commonwealth Coatings Corp.,* the Court also rejected the argument that Congress intended "to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another" (393 U.S. at 150, 89 S.Ct. 337).

In cases where disputes over arbitration and litigation and jurisdiction occur a parties rights **are delayed,** rather than effectively terminated in  one proceeding. Courts have believed that a stay is the most appropriate solution here in order to avoid the large volume of arbitrations and inconsistent judgments that are gradually culminating in a procedural and substantive train wreck.  See also Allstate Ins. Co. v. Elzanaty, 929 F. Supp. 2d 199, 220 (E.D.N.Y. 2013)

Since the Panel already ruled it has no jurisdiction over the claims against the NFA, Claimants argue that the stay should be extended until this matter must be resolved before the Courts. Arbitrarily terminating a case, prior to resolution from the Courts would be severely prejudicial to Claimants timely filed claims. Courts have also taken note that a large number of New York State courts have stayed arbitrations under precisely the same facts as in the present case. See, e.g., Autoone Ins. Co. v. Manhattan Heights Med., P.C., 24 Misc.3d 1229(A), 899 N.Y.S.2d 57 (Table) (N.Y.Sup.Ct.2009) ("The plaintiffs have shown that the issuance of a preliminary injunction is necessary to prevent the repetitive litigation and arbitration of numerous .. claims .. raising the same defense."); St. Paul Travelers Ins. Co. v. Nandi, 15 Misc.3d 1145(A), 841 N.Y.S.2d 823 (Table), 2007 WL 1662050 (N.Y.Sup.Ct.2007)

However, in the alternative if the Panel does not respectfully extend the stay as is supported in case law, then Claimant (through is successor) must respectfully move to remove the stay to preserve its rights, but for the sole purpose of determining the conflicts of interest in this proceeding of the NFA's role in the arbitration. Therefore Claimants through its successor, respectfully request the Panel enforce the subpoenas on the NFA, which are outstanding also from October 22, 2019 and November 4, 2019 so the documents and conflicts can be reviewed transparently prior to any further action. Those documents include NFA's signature on all audits and compliance reviews, authorizing the conduct that violates the heart and intent of the Commodities Exchange Act, and demonstrating irreconcilable conflicts of interest.

(II) The law in this District always stays proceedings till the Conclusion of the Other Proceeding, a atays that expire *prior to resolution* in  the parallel proceeding are prejudicial to Claimant and not consistent with the law/

The Federal Arbitration Act allows parties to an arbitration to obtain a stay of federal proceedings regarding the claims that they are arbitrating, ***pending the conclusion of the arbitration***. 9 U.S.C. § 3 (1988 & supp. 1993). Non-parties to an arbitration do not have this right, but they may petition a federal court to grant a stay pursuant to its inherent power to control its docket. *Sierra Rutile Ltd. v. Katz,* 937 F.2d 743, 750 (2d Cir.1991). The issuance of such a stay ***is firmly within the district court's discretion***. *McCowan v. Sears, Roebuck & Co.,* 722 F.Supp. 1069, 1076 (S.D.N.Y.1989) (Carter, J.). Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc., 885 F. Supp. 499, 501–02 (S.D.N.Y. 1995)

The two critical pieces here is that one proceeding is stayed "***pending the conclusion***" of the other. And as stated supra, the decision of that stay ***lies firmly within the Court's discretion***. The Panel has already ruled that is has no jurisdiction over the NFA. For these reasons, Claimants and its successors argue the stay should be continued pending the conclusion of the parallel actions and 20-CV-03668 determining the NFA's role and conflict of interest in this proceeding.

There is no precedent in any action in the Courts where the time frame for the stay is arbitrary or occurs prior to the resolution of the other proceeding. Accordingly, Claimant and its successor, move to extend the stay of 18-ARB-5 pending resolution of the Court proceedings related that are ongoing in the Southern District of New York. This is so as to *prevent manifest injustice* and to not to prejudice any of the *timely filed claims*, that are presented to this Arbitration without the knowledge, at the time of filing, that NFA are alleged to have participated in.

In none of the case precedent do the stays of one proceeding expire prior to the pending outcome of a proceeding or arbitration. Courts also stay litigation, pending outcome of arbitration. Supporting case law in the District, shows again the duration of the stay was "pending resolution" or "conclusion" of the parallel proceeding. Claimant here is arguing that the arbitral procedures are not fundamentally fair, and objects to the perception of bias, as NFA's ongoing communications with the Panel, while simultaneously the NFA being potentially liable and being Defendants in this case, are an irreconcilable conflict of interest and are impermissible under the FAA of evident partiality and bias, and other rights of Claimant to have its clams heard in a neutral forum. Fundamental fairness speaks loudly that co-Defendants cannot simultaneously act as "administrators" to a proceeding where they themselves are liable. Courts have agreed that "evident partiality" means "an appearance of bias" standard as requiring an objective assessment of whether a reasonable person would believe an arbitrator was partial to a party to the arbitration. [1] Among the circumstances under which the evident partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties. *Id. Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 31 (2d Cir. 2004).

The parallel action 20-CV-03668 against the National Futures Association ("NFA") filed on or around May 8, 2020 in SDNY which has amended complaints due on December 24. 2020 seeks to

---

[1] *JCI Communs, Inc. v. IBEW, Local 103*, 324 F.3d 42, 51 (1st Cir. 2003); *Nationwide Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 626 (6th Cir. 2002); *ANR Coal Co., Inc. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 500-501 (4th Cir. 1999).

address this issue. The Court has expressly ruled that Plaintiff rights to seek injunctive relief enjoining this Arbitration in Order dated October 6, 2020  are subject to jurisdiction within the Court. That relieves jurisdiction from the Panel to the Court.

(iii) Claimant(s) and its successors have rights to preserve their claims under the Arbitration Rules

The stay should also be extended so as not to prejudice any of Claimants timely filed claims. As is clearly stated under the NFA Arbitration Rules, and the Commodities Exchange Act, Claimant and its successor have clear rights to a "fair", "expeditions" and "equitable" proceeding that protects it rights under the law. Arbitrarily "terminating" Claimants timely filed claims would be prejudicial would support the ongoing attempts of the Respondents and NFA to deny Claimant the right to have it claims properly adjudicated.

Claimant is also entitled to a proceeding that is free from any conflicts of interest, or potential bias, and the NFA is required under the FAA to disclose timely to Claimant(s) and this Panel all documents and information it has that could be rendered a conflict of interest. As has been brought forward, in the pending proceeding before the District Court, Claimant has alleged that extraordinary irregularities in this proceeding, that violate not just the FAA but also the duties of the NFA to enforce it rules as well as conflicts of interest. Therefore Claimant[s] are entitled to preserve their claims pending resolution of this extraordinary conflict in the Courts. Further Claimants paid in full their arbitration fees and are entitled to benefit of resolution of this proceeding in one forum or another – and not an arbitrary termination of its rights.

(iv) NFA's conflict in this proceeding is irreconcilable

It was not until early March 2019, after selection of this forum,  that Claimant(s) became aware of the material conflicts of interest, and ADMIS through its counsel raised that NFA were aware of the conduct and failed to enforce their rules. This led to material conflicts of interest in the NFA overseeing this proceeding and the timeline is set forward in 20-CV-03668 including promptly sending public information requests sent to the NFA to request, as is required under the FAA, for disclosures that Claimant is entitled to for NFA's impartiality in this proceeding. (*See* 20-CV-03668 *ECF*1, Exhibit 5). Despite repeated requests, those disclosures were never made in violation of the FAA. Claimant would never have selected the NFA Forum if it had known of the role and complicity in the tortious conduct.

Courts are empowered to substitute a contractually chosen arbitrator [and administrators of the arbitration] where there is evidence of a conflict or bias (*see* 4 Commercial Arbitration § 131:17; *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1068 n. 2 [2d Cir.1972] [affirming district court's substitution of a neutral arbitrator for parties' chosen arbitrator "to insure a fair and impartial hearing," where the chosen arbitrator had become a partner of the law firm representing one of the parties]). As was decided in TCR Sports Broad. Holding, LLP v. WN Partner, LLC, 59 N.Y.S.3d 672, (Mem)–700 (2017),  Courts do have the discretion to direct a rehearing before an entirely different arbitral forum, where it is shown that a fundamentally fair hearing cannot be had in the parties' chosen forum.

In April 2019, Claimant also became aware of documents signed by NFA compliance officers authorizing and approving the dissemination of CTA records to its competitors, in violation of the Commodities Exchange Act, as well as other conduct that grants discretionary authorization to Rothman, Boshnack, Felag and others. The magnitude of compliance violations includes documents that show one specific compliance officer, gave NFA's written approval in response to audit question on how Felag and Vision affiliates handled margin calls and risk management on behalf of ADMIS customers that ADMIS had delegated John Felag and Vision affiliates were authorized, to  (i) place trades on behalf of ADMIS customers and CTA's  account - <u>without the customers and CTA's knowledge, authorization and consent</u>; (ii) liquidate ADMIS customers' and CTA's account - <u>without the customers and CTA's knowledge, authorization and consent</u>; (iii) add buying power, extend or add credit to a ADMIS customer and  CTA's confidential account, without the customers and CTA's knowledge, authorization and consent; and/or  (iv) take other actions in their sole discretion, related to margin activity, without the customers and CTA's knowledge, authorization and consent. These actions are violations of the Commodities Exchange Act (CEA Section 22) which gives rise to a private cause of action against NFA. This gives rise to a material conflict of interest in NFA's continuing role to oversee or administer this proceeding.

ADMIS through their counsel. have repeatedly stated that NFA's complicity in the scheme is their primary defense to the scheme and the fact that NFA knew and approved the conduct is instrumental to their defense of this proceeding. There is clear and evident partiality in NFA's own liability which is now proceeding before the Courts. Again Claimant[s] timely sought disclosures

including promptly notifying the NFA of the conflicts of interest in letters, and requesting discussion of the conflicts in preliminary conference. The issue was not addressed in the preliminary conference, timely sought in May 2019.[2]

During the NFA Arbitration proceeding, in August and September 2019 Claimant went further to file requests for issuance of subpoenas and on several occasions requested disclosure from the NFA. NFA instead of cooperation sent in letters of "opposition" to disclosure – violating their obligations to disclose under the FAA. Meaningful requests for disclosure of the conflict were requested dating back to March 2019.  Disclosure serves the twin goals of "encourag[ing] conflicts over arbitrators to be dealt with ***early*** in the arbitration process and help[ing] limit the availability of collateral attacks on arbitration awards by a disgruntled party." *Lucent Techs. Inc. v. Tatung Co.,* 379 F.3d 24, 29 (2d Cir.2004). As Justice White noted in *Commonwealth Coatings*, "it is far better that the relationship [i.e., a potential conflict between an arbitrator and a party] be disclosed at the outset, ... than to have the relationship come to light after the arbitration, when a suspicious or disgruntled party can seize on it as a pretext for invalidating the award."  393 U.S. at 151, 89 S.Ct. 337 (White, *J.,* concurring). Claimants have repeatedly requested full disclosure on the relationship of NFA and ADMIS and Vision's new affiliates High Ridge Futures, and their *signatures on documents* permitting the wrongful conduct alleged in the Complaint.

Even mandatory disclosure under NFA's own rules 7 (a)(1) and (2) where by ADMIS had until October 5, **2018** (note the year) to produce the Guarantee and Fee Agreements between ADMIS, Boshnack. Rothman and High Ridge. Repeatedly and defiantly violating NFA rules – with no consequence – ADMIS together with the NFA stalled over 365 days to produce documents that were required, that apparently were approved by the NFA and not until October 25, **2019**. The entire lapse of enforcement, at all times, procured procedural benefit to ADMIS and its co-conspirators and violated Claimants procedural rights.

The Panel is requested to note express language in the Arbitration Rules as follows: 7(a)(2 The parties shall exchange those documents **no later than 15 days** after the last pleading is due which

---

[2] The Panel should also be reminded that in June 2019 Claimant sought disqualification of Kopecky-Schumacher in conflicts of interest by ADMIS attempting to represent all Respondents. With some irony in the District Court proceedings, 20-CV-3873 and 20-CV-03871 Vision Defendants and Lazzara defendants now do have separate counsel, being represented by another firm Wiggins in CT. Claimant[s] continue to assert there were and are conflicts in interest in that representation, as was allowed to continue in the NFA Forum, as Kopecky-Schumacher now have privileged information of Lazzara and others that will be required to be disclosed in SDNY.

was in October, 5 2018.  And also Under 7(a)(1) The parties shall cooperate, without resort to issuance of subpoenas, in the voluntary exchange of material and relevant documents and written information which may serve to facilitate a *fair, equitable and expeditious hearing*. It materially prejudiced and harmed Claimants rights under the arbitration, as waiting *over 365 days* until October 25, 2019 for documents that were requested in 2018 to not be produced timely. Producing documents *after 365 days*, without any consequence, sanctions or enforcement of the NFA arbitration rules, also materially obstructed Plaintiffs rights. There were over three (3) motions to compel – including a fourth notices of default where ADMIS and its conspirators even defied Panel orders to produce phone records, signed documents and risk agreements. There was not one issuance of sanctions, costs and expenses resulting in ongoing prejudice to Claimants.

Instead, supporting the inefficiencies, and delays and lack of enforcement of the rules, NFA also failed to provide their own mandatory disclosures. Rather than cooperate with the disclosures required under the FAA,  the NFA has and continues to delay or obstruct in fully providing the information on its own disclosures that Claimant is lawfully entitled to receive to (as it is entitled to all disclosures that pertain to bias and conflict of interest). Courts have ruled they have subject matter jurisdiction under the FAA when arbitrators have failed to make the requisite disclosures. To find waiver in this circumstance would "'put a premium on concealment' in a context where the Supreme Court has long required full disclosure." *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W. 3d 518, 528 (Tex. 2014) (quoting *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1204 (11th Cir. 1982)). *See* Olympic Eagle ("Arbitration overturned due to Arbitration's failure to provide notice of evident partiality").

As argued prior  NFA has not only not voluntarily cooperated, but in motions in this forum, and in objecting to the subpoenas, it has not complied with its duty to disclose and any investigation into the facts related to its involvement and business dealings with Tom Kadlec, Vision parties and ADMIS. It also supports Claimants rights to stay this proceeding <u>pending resolution</u> of the matter before the Court. This information is material to Claimants rights to have its case heard in a neutral forum.  (*see* 4 Commercial Arbitration § 131:17; *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1068 n. 2 [2d Cir.1972] [affirming district court's substitution of a neutral arbitrator for parties' chosen arbitrator "to insure a fair and impartial hearing," where the chosen arbitrator had

become a partner of the law firm representing one of the parties]). Further Claimants have a right to all disclosures regarding NFA's audit, compliance and complicitness in the scheme.

(v) An Arbitrary End of Stay without resolution of the partiality would be manifestly unjust

Understanding that the Panel issued a stay for an arbitrary twelve month period of time, (at that time the District Court case had not yet been filed), this motion is filed to reflect the new facts, and that the case is now filed in May 8, 2020, *20-CV-03668* in SDNY and is now pending before the Courts. (Related cases *20-CV-03871* and *20-CV-03873* were also filed on May 18, 2020). Claimants rights should not be prejudiced by the length of time it takes to resolve the matter in Court.  The Panel should also note, that unforeseen to all parties, was the fact the impact of coronavirus which put NYC into shut-down in mid-March 2020 extending into the end of June 2020. These are also unprecedented circumstances that have contributed to the schedule of resolution, and these also need to be factored into the time to resolve the case. Because of significant conflict of interest in NFA's involvement in this case, Claimants filed its actions also in SDNY and those cases are also proceeding. It is certain that Covid 19 has slowed down and resolution and filing of these actions. Those delays should not prejudice Claimant in the preserving of its rights.

Given that the cases are now proceeding before the Court, any early termination of this proceeding, prior to resolution of the conflicts of interest and the disclosures of all involvement and knowledge of NFA, including their signed audits on Vision affiliates, Boshnack, Felag, Rothman needs to be put forward would be manifestly unjust. As the Panel has clearly ruled, the jurisdiction over the NFA, lies before the District Court.

Therefore, given the finite end to the stay, in the prior Order 17, dated November 13, 2020 - in order not to prejudice Claimants rights, Claimants are  respectfully requesting that (a) either the stay is extended to the resolution of the matter before the Court including (b) a clear tolling of the statute of limitations to the date of the timely filed Complaint in this proceeding.

In the alternative – so as not to prejudice Claimants rights – since the Panel has ruled Claimant must restart the proceeding, while parallel proceeding, Claimants request full disclosure of NFA's involvement prior to them "administering" this proceeding. Claimants object to any appearance of bias and ongoing conflicts, with the NFA administering the proceeding and having

ongoing ex-parte communications with the Panel, <u>while simultaneously</u> being Defendants in a parallel proceeding in SDNY.

If the proceeding is restarted, Claimants respectfully invoke their rights, for the conflicts of interests to be resolved, and all disclosures by the NFA made. In that case, Claimants respectfully request that the subpoenas against the NFA, are enforced, (*See* Order dated November 4, 2020, and *See* Order dated October 22, 2020) and the documents in that information is shared so that the Parties and the Panel can have transparency into the material conflicts of interest, bias and evident partiality that has been alleged.

The Panel is respectfully requested to follow the guidance of the FAA, that if the NFA are also liable and defendants to this proceeding, their involvement with ADMIS and Vision and co-defendants **must be fully disclosed**. There is also a material objection to the NFA's ongoing ex-parte communications with the Panel as their interest are clearly opposite to Claimant[s].

Therefore this Arbitration, as governed under the FAA, should require full disclosure of what ADMIS have alleged was approved by the NFA to allow the conduct of sharing proprietary and confidential transactions records of CTA's accounts without their knowledge and consent, depleting their profits and withdrawing funds without their consent, and tampering with their margin in violation of exchange rules. As ADMIS have indicated the NFA approved this, the NFA violated the Commodities Exchange Act. The Panel is also reminded of emails by the lawfirm of Kopecky-Shumacher on or around September 25, 2019 directed to the Panel stating

> *As previously stated, the issue which is obviously triggering Claimant's information requests appears to largely be Ms. Kumaran's disbelief that the NFA was aware of the bulk transfer of customer accounts from Vison to ADMIS, and the involvement of High Ridge Futures with those accounts going forward following that transfer. Accordingly, Respondents will shortly be asking the Panel to request that an NFA employee possessing the relevant knowledge appear at the hearing to provide that information.*

continues with the purpose of resolving the conflicts of interest in the Arbitration

`              If the NFA approved conduct that violates NFA Rules and the Commodities Exchange Act – it is clear infraction under CEA Section 22, and Plaintiffs private rights of action need to enforce the FAA, have made clear that if an arbitrator fails to investigate facts indicating a conflict of interest that come to light after the award, and those facts are not trivial, the aggrieved party may use this information to demonstrate evident partiality, warranting vacation of the award under the Federal

Arbitration Act. 9 U.S.C.A. § 10(a). This is precisely the type of conduct alleged in this Complaint. Under the Federal Arbitration Act when an arbitrator knows of a potential conflict, a failure to either investigate or disclose an intention not to investigate is indicative of evident partiality. 9 U.S.C.A. § 10(a)(2). *See* Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 134–39 (2d Cir. 2007).

(vi) Administrators of Arbitrations subject to the same standards of disclosure

Also very instructive to this Panel is the case *TCR Sports* (*See* TCR Sports Broad. Holding, LLP v. WN Partner, LLC, 59 N.Y.S.3d 672, (Mem)–700 (2017)). In this case, which is instructive, the Courts removed an arbitration due to conflicts of interest in the *administrators* of the arbitration themselves. Therefore the obligation to disclose conflicts, and areas of past dealings in the very subject matter of this case, applies also to the administrators – in this case the NFA. In the parallel case in *TCR Sports*, the Second Circuit found that the *administrators* in the MLB run arbitration, were biased, and had pecuniary and financial interests in steering the arbitration in favor of one party over the other. However given the peculiar and exceptional facts of this case, where the NFA themselves are liable and have a pecuniary interest in the outcome of this case.

If NFA signed agreements or documents permitting owners of disbarred Vision ongoing access to its competitors and CTA's proprietary data and customer accounts, without their knowledge and consent and without disclosure that conduct is a violation of the Commodities Exchange Act. Further Claimants (and other CTA's and customer's had a right to know this prior to opening the account. In any event accessing a CTA's account requires their express permission. Therefore NFA are material parties and defendants to this case.

If NFA signed agreements with Vision owners permitting a "trailing commission or fees" in perpetuity that would be deducted from customers, CTA' and Claimants accounts, reducing their profitability in perpetuity, without their knowledge and consent and without disclosure that conduct violates the CEA. Claimants had a right to disclosure of that information prior to opening the accounts. Failure to disclose that information is a violation of the Commodities Exchange Act. NFA's knowledge and failure to enforce those disclosures is an express violation of the CEA, and the CFTC rules and regulations requiring that disclosure. Therefore NFA are material parties and defendants to this case.

The Complaint has also stated that Claimants was not the only account.  The Complaint alleges dozens of customers and CTA's have been impacted – and the unauthorized fee generation – also not permitted under the CEA generates millions of dollars of  NFA also had a vested interest in the revenue from the unlawful and unauthorized conduct under which they signed a "settlement agreement" allowing them to remain registered and then perpetrate frauds on others.

NFA therefore _does_ have a pecuniary and financial interest in the outcome. NFA not only received a  $2 million dollar settlement from Vision which was publicly announced in 2014, and NFA are parties to an agreement with its owners Boshnack and Rothman, also Defendants in this case and also engaged in a fraudulent scheme that generated millions of dollars of revenue to ADMIS and Vision affiliates generating thus far over $50 million dollars in unauthorized revenue. Any agreement it made with Boshnack, Rothman and High Ridge to re-register by way of settlement had to have complied with the Commodities Exchange Act. NFA financially benefitted from, that further permitted trailing commissions and unauthorized dissemination of customers and CTA"s trading accounts, violated the Commodities Exchange Act.

NFA made public announcements also in 2014 that customers doing business with High Ridge would have access to their profile in NFA Basic to know about the past disciplinary conduct of Vision. But apparently Claimants accounts (as CTA's) were rampantly engaged in business with High Ridge, that Claimants never consented or authorized, that were engaged in direct competitors of.   Therefore with full knowledge that this conduct was prevailing NFA participating in the concealment from customers and CTA's of the activity.

 Instead Boshnack, Rothman, High Ridge and their employees are now perpetrating fraud on new CTA's, direct competitors of Claimants, (shuttering their competitors like NRCM), improperly registering themselves as directly competing CTA's and other misconduct and unlawful acquisition of their property – as well as depleting their trading profits laden with unauthorized fees – Claimant calculated withdrawals estimated to be 3.4% in forty five days (close to 18% a year) to reduce performance of its CTA, while procuring unfair competitive advantage to Vision. NFA signed agreement permitting this conduct to occur and is and was the financial recipients of the benefits. This is direct violation of the CEA Section 22, for which Claimants have private rights of action. ADMIS and Vision and its conspirators also engaged in direct unfair competition. Vision Investment

Advisors, after shuttering NRCM, now front run on a directly competing options trading program. (*See* 20-CV-03873)

(vii) Early termination of this proceeding without resolution of the conflicts of interest in the Courts would be manifestly unjust and prejudice Claimants and further showing of evident partiality

The Panel is respectfully reminded that despite the "opposition" from ADMIS, Vision and NFA, Claimant is entitled to a full and fair hearing on the merits of the case, and adjudication in a neutral forum or Court without bias and evident partiality. Claimant also paid its fees in full for a full and fair hearing. Any early and abrupt termination of this proceeding without resolution of the conflicts of interest, and NFA's conflicts of interest, would significantly prejudice Claimant[s] rights while parallel proceedings are continued in Court.

It would also be further evidence of "evident partiality" and bias by the NFA and co-conspirators to wrongfully terminate Claimant[s] rights to a full hearing. NFA never disclosed the facts of its agreements and approvals with ADMIS and High Ridge to participate in the fraud. Claimant would never have brought its claims in this forum if it had known. The Supreme Court addressed the meaning of "evident partiality" under § 10(a)(2) in *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), and concluded that it existed when one of the parties failed to disclose facts about his relationship with the Defendants. *Id* In this instance the Complaint pleads that the NFA failed to disclose that it *knew* documents existed that showed it was involved in the scheme to generate profits (acting with commercial interest).

With respect to the "evident partiality" ground for disqualification of an arbitrator in the Federal Arbitration Act (FAA) ..  the FAA will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. 9 U.S.C.A. § 10(a). An arbitrator who knows of a material relationship with a party and fails to disclose it meets *Morelite*'s "evident partiality" standard: A reasonable person would have to conclude that an arbitrator who failed to disclose under such circumstances was partial to one side. The Complaint in this case goes further – stating that the NFA had a vested interest in protecting ADMIS in the outcome.

Nonetheless as relevant to this motion, an arbitrary termination of this proceeding would be manifestly unjust and prejudice Claimant – and deny Claimants' rights to due process and justice. ADMIS and NFA and all other Conspirators have vested interests in denying Plaintiffs' procedural

rights. Any decision to not extend the stay, concurrent with the District Courts proceedings would be further evidence of partiality and bias, and would also result in the motion to vacate the decisions to prejudice Claimant(s) and its successors in this proceeding by an NFA controlled forum.

### B.  FEDERAL ARBITRATION ACT REQUIRES DISCLOSURE OF CONFLICTS OF INTEREST

In the alternative, if the Panel is not to reasonably extend the stay, Claimants move to reactivate the proceeding for the sole purpose of its motion to object to the arbitrability given NFA's involvement in this proceeding and impending liability for their knowledge and participation in this and would respectfully move to have the NFA comply with the outstanding subpoenas issued on Order 13 dated on or around November 4, 2019 and Order 10 dated on or around October 22, 2019.

### I - Issues of Arbitrability and NFA's Conflicts of Interest Must be Resolved Prior to Proceeding

With legal action now pending and active against the NFA, there remains an unequivocal conflict of interest that Plaintiff has objected to this litigation proceeding while action before the NFA proceeds.  The FAA permit courts to reform an arbitration agreement on legal or equitable grounds (9 U.S.C. § 2; ) *see also Aviall, Inc. v. Ryder Sys., Inc.,* 110 F.3d 892, 896 [2d Cir.1997] discussing reformation of contract in *Erving v. Virginia Squires Basketball Club,* 349 F.Supp. 716 [E.D.N.Y.1972], *affd.* 468 F.2d 1064 [2d Cir.1972], *supra, see TCR Sports* ).  Similar prevails under New York law. *see Rabinowitz v. Olewski,* 100 A.D.2d 539, 473 N.Y.S.2d 232 [2d Dept.1984]. In *Rabinowitz,* the Second Department, applying state law, affirmed the trial court's removal of an arbitration from the forum that the parties had selected, because "the appearance of bias ... permeate[d] the entire [arbitral forum] including the board of arbitrators from which the arbitrators for th[e] dispute were selected" *id.* at 540, 473 N.Y.S.2d 232.

Issues of arbitrability and conflict of interest in Arbitration are subject to the jurisdiction of the Federal Courts. In TCR Sports Broad. Holding, LLP v. WN Partner, LLC, 59 N.Y.S.3d 672, (Mem)–700 (2017), the Second Circuit ruled that while the parties' contractual choice to select a particular arbitral forum is entitled to great deference, courts nevertheless retain their inherent judicial power and their statutory power under 9 U.S.C.§2, to override that choice in the event that the forum is shown to be so corrupt or biased as to undermine the reasonable expectations of the parties to have a fundamentally fair hearing. Plaintiffs has pled explicitly in the Complaint that permitting NFA oversight in this forum, is replete with facts related to fundamental fairness, bias, and evident

partiality and corruption.[3] It is for this reason the Arbitration was in fact stayed. The Panel and the Court have to investigate all disclosures related to NFA's participation, knowledge and complicity in the scheme

## II - Issue of Evident Partiality Is Before the Court

Claimant has exerted its private right of action under CEA Section 22 before the Courts the issue of evident partiality. For this reason to avoid any conflicts, the case should be stayed pending resolution of those motions. Courts have agreed that "evident partiality" means "an appearance of bias" standard as requiring an objective assessment of whether a reasonable person would believe an arbitrator was partial to a party to the arbitration.  In the Second Circuit, evident partiality within the meaning of 9 U.S.C. §10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. *JCI Communs, Inc. v. IBEW, Local 103*, 324 F.3d 42, 51 (1st Cir. 2003); *Nationwide Ins. Co. v. Home Ins. Co*., 278 F.3d 621, 626 (6th Cir. 2002); *ANR Coal Co., Inc. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 500-501 (4th Cir. 1999). Among the circumstances under which the evident partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties. *Id.* 4 4 *Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 31 (2d Cir. 2004).

The American Arbitration American Code of Ethics and in particular, the ARIAS Code of Conduct, arbitrators have an affirmative obligation to disclose "any interest or relationship likely to affect their judgment. Any doubt should be resolved in favor of disclosure." Otherwise, an arbitration award may be vacated and/or the District Court does have subject matter jurisdiction under the Federal Arbitration Act due to the "evident partiality" of the arbitrator to remand a case to a new and impartial forum (See *TCR Sports*).  This District had made clear, that if an arbitrator fails to investigate facts indicating a conflict of interest that come to light after the award, and those facts are not trivial, the aggrieved party may use this information to demonstrate evident partiality, warranting vacation of the award under the Federal Arbitration Act. 9 U.S.C.A. § 10(a). This is precisely the type of conduct alleged in this Complaint. Under the Federal Arbitration Act when an arbitrator knows of a potential conflict, a failure to either investigate or disclose an intention not to investigate is indicative of evident

---

[3] See 20-Cv-03668 - ECF1 ¶24, ¶131¶145,¶149, ¶158, ¶177-186, ¶219

partiality. 9 U.S.C.A. § 10(a)(2). *See* Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 134–39 (2d Cir. 2007).

III – Disclosures under the FAA require NFA to disclose to Plaintiff their signatures on documents approving the conduct alleged in this case and all other material disclosures

Plaintiff is again respectfully requesting full disclosure of the audits and compliance reviews upon which the NFA approved the illegal dissemination of CTA accounts to Vision without their consent and the other conduct alleged herein, that was not disclosed prior to the account opening. The evident partiality in this proceeding needs to be expeditiously resolved.

Among the circumstances under which the evident-partiality standard is likely to be met are those in which an arbitrator [and/or administers of the arbitration] fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties. *Scandinavian Reinsurance Co. Ltd.,* 668 F.3d at 72.Along with the case law, arbitrators have duties to disclose pursuant to the American Arbitration Association Code of Ethics including, any known direct or indirect interest in the outcome of the arbitration. The inherent discretion of the courts to fashion the appropriate remedy is necessary to ensure, among other things, that arbitrations are conducted in a ***fundamentally fair manner***. (*Aircraft Braking Sys. Corp. v. Local 856, UAW,* 97 F.3d 155, 162 [6th Cir.1996] [discussing powers of federal district courts], *cert. denied* 520 U.S. 1143, 117 S.Ct. 1311, 137 L.Ed.2d 475 [1997]; *see also* New York Const., art. VI, § 7 [New York "supreme court shall have general original jurisdiction in law and equity and the appellate jurisdiction herein provided"]; *Correa, **693* 15 N.Y.3d at 227–228, 907 N.Y.S.2d 106, 933 N.E.2d 705).

These circumstances are substantially similar to the *TCR Sports* and the MLB where the *administrators* of the arbitration failed to disclose and address the conflict once alerted. *see also Applied Indus. Materials Corp.,* 492 F.3d at 137 [where "[a]n arbitrator ... knows of a material relationship with a party" but fails to disclose it, "[a] reasonable person would have to conclude that [the] arbitrator [or administrators of the arbitration] who failed to disclose under such circumstances was partial to one side," even where the award itself was not clearly favorable to the other party]; *Morelite,* 748 F.2d at 84 ["vacating award based on relationship between an arbitrator and the President of union"].

In this case, the NFA is alleged to have participated with ADMIS and its co-conspirators in infringing the rights of customers and CTA's, with full knowledge of the wrongdoing alleged in the

Complaint, therefore this proceeding needs to be brought in the Southern District. As of now, the Courts need to resolve the evident partiality as well as the role of the NFA and knowledge of the conduct which will need to go through the time frame set forth on the Court schedule. Therefore Claimant[s] have argued that in judicial efficiency a proceeding is stayed pending resolution of the Court action.   Other legal argument is provided in those motion are not duplicated but can be referred to and incorporated here in 20-CV-03668 (See Motion For Reconsideration / Rights under the Federa

## Conclusion

Pursuant to Order 13, dated November 19, 2019 this Panel issued a stay of this Arbitration 18-ARB-5 for an initial twelve months until November 13, 2020 pending jurisdiction of related proceedings against the National Futures Association ("NFA") pursuant to CEA Section 22. The Panel in prior Orders ruled that it has no jurisdiction over the NFA. Plaintiff filed its claims against the NFA on or around May 8, 2020 in SDNY under file number 20-CV-03668. Concurrently, proceedings have been initiated also in Southern District against ADM Investor Securities (Case 20-CV-3873) and Vision Financial Markets (20-CV-3871). The case is currently pending for the Court's resolution of the validity of this Arbitration and material conflicts of interest that have been cited in the NFA's ability to oversee the proceeding.

In order to preserve Claimant (and its successors) rights, and pending resolution of those District Court respectfully request to extend the stay until resolution of the proceedings in Court and to preserve the statute of limitations in its timely filed Complaint.

Claimant through its successor respectfully requests ORDER 17 is modified to state

a) The Stay is extended pending resolution of related matters 20-CV-03668, 20-CV-03871 and 20-CV-03873 in District Court in the Southern District of New York[4] and:

b) The statute of limitation is tolled to the date of filing and notice of initiation of this Complaint.

---

[4] Claims against the NFA are brought under 7 U.S.C.25 (b) which provides Plaintiff a private right of action against a registered futures association, and its officers, directors and board members for their failure to enforce the Commodities Exchange Act.  The foregoing Court actions, challenge the validity of this proceeding, under the citing conflicts of interest of the NFA's participation in this scheme and knowledge of the fraud, and failure to enforce its rules. Claimant seeks conclusion or resolution of those proceedings prior to any abrupt termination of these proceedings.

November 12, 2020

In the alternative Claimant seeks to reactivate the proceeding to preserve its rights for its timely filed claims, and seek the subpoenas on the NFA are produced so that the Panel can investigate and resolve the material conflicts of interest and full transparency is received in this proceeding.

Thank you for your attention to this.

Respectfully submitted.

//SSK//

Samantha Siva Kumaran

*Successor in Interest from dissolved NRCM

Dated: November 12, 2020