Page 1

**VIA ECF/EMAIL**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/25/2021
```

Honorable Judge Stewa[...]
United States District C[...]
Southern District of New York
40 Foley Square
New York, NY 10007

ENDORSEMENT: The Court will rule on Plaintiffs' motion to file certain exhibits under seal once such documents are filed and the Court has the opportunity to review them. In the interim, Plaintiffs may file such exhibits under seal, as set forth in the Court's Individual Practices. SO ORDERED.
Dated: May 25, 2021

Re: *Kumaran vs. ADMIS - 1:20-Cv-03873*-GHW-SDA

Dear Hon Judge Aaron;

### UNOPPOSED LETTER MOTION FOR CONFIDENTIALITY OF PLAINTIFF'S COMMERCIALLY SENSITIVE DATA IN APPENDICES FILED IN ARBITRATION

In Order on Friday May 21, 2021 (ECF51) this Court ordered Defendant ADMIS to file any and all pleadings from the NFA Arbitration no later than Wednesday 26 May, 2021. ("Pleadings"). Plaintiffs hereby promptly notify the Court that some of the exhibits and appendices contains several pages of highly confidential and commercially sensitive information of Plaintiffs (screenshots of financial data, positions) which discloses commercial and financially sensitive data. In accordance with Hon. Judge Gregory Woods Individual Rules 4(a)(i) and (ii)[1] Plaintiffs also promptly notified Defendant ADMIS to file the two Appendix-Exhibits and Appendix-C-Exhibits under seal so that Plaintiffs could have an opportunity to redact. (See **Exhibit 1 and 2**).

By letter confirmation today May 25, 2021, Defendant ADMIS has responded that they **take no position on the confidentiality sealing**. (*See* **Exhibit 3, Pg 4**). Therefore Plaintiffs consider this motion for sealing the exhibits above as unopposed. However, Defendant ADMIS has also noted a discrepancy that do not have appear to even have received the above exhibits which were part of Plaintiffs outbound service and this appears to a material discrepancy that ADMIS are researching as Defendants copy of pleadings is different from Plaintiffs. (See **Exhibit 3, Pg 1**). Nonetheless Plaintiffs respectfully request its financial data and account information be filed under seal in accordance with the good cause showing in this motion, the sealing of which is unopposed. Plaintiffs also have in reciprocity agreed to cooperate that ADMIS' financial data is also filed under seal.

---

[1] It is undetermined whether to apply Hon District Judge Woods rules or Magistrate Judge Aaron's rules. In related proceeding 20-CV-03668 ECF59 when the Court ordered redactions of G&F Agreements, Judge Aaron deferred to Court rules. Therefore in consistency Plaintiffs also refer to Rule 4 of Judge Woods..

 GOOD CAUSE SHOWING FOR SEALING FINANCIAL INFORMATION

It has long been accepted in this District, as included in several S.D.N.Y Model Orders, that the following categories of information are protected from disclosure:

2. The Party or person producing or disclosing Discovery Material (each, "Producing Party") may designate as Confidential only the portion of such material that it reasonably and in good faith believes consists of:

(a) previously non-disclosed financial information (including without limitation profitability reports or estimates, percentage fees, design fees, royalty rates, minimum guarantee payments, sales reports, and sale margins);

(b) previously non-disclosed material relating to ownership or control of any non-public company;

(c) previously non-disclosed business plans, product-development information, or marketing plans;

(d) any information of a personal or intimate nature regarding any individual; or

(e) any other category of information given confidential status by this Court after the date of this Order.

*See* Hon. District Judge Gregory Woods Protective Order Form under Individual Rules of Practice.

## SUPPORTING PROCEDURE

Consistent with 2(a)-2(c) of the above model Protective Order and Hon. Judge Gregory Woods Individual Rules of Practice 4(a)(i), Plaintiffs respectfully seek to narrowly protect commercial information that discloses financial data, profitability reports, account statements, and details of trades and positions including volumes, strikes, risk management data, which are trade secrets and account valuations in its trading account at ADMIS. The financial trading data is commercially sensitive and would cause Plaintiffs irreparable and particularly harm if publicly disclosed, as that information will allow competitors and other traders to learn confidential and sensitive information related to the inner workings of the CTA's account and risk management. Substantial competitive harm will also occur to Plaintiffs if details about its transaction records are made public or the financial data in its accounts. Other CTA's and CPO's could use this information to glean financial information about the transaction activities, risk management and the positions that Plaintiffs are using in a competitive manner as traders.

Plaintiffs data is also protected under the Commodities Exchange Act as CTA (Commodities Trading Advisor) and Commodities Pool Operation ("CPO"). For example NFA Rule 2-4 9061[2] also protects the transaction history and trading records of a CTA who are using that information to compete as traders. The rules specific prohibit public disclosure of a CTA"s transaction records,

---

[2] https://www.nfa.futures.org/rulebook/rules.aspx?Section=9&RuleID=9061

and/or obtaining or attempting to obtain information disclosing a CTA's historical trading positions without the CTA's permission.

In fact the commercial sensitivity and competitive value of the confidentiality of a CTA's trading records is the subject matter of this very litigation and public dissemination to a wider audience including Plaintiffs' competitors would cause significant and immediate irreparable harm.

### SUPPORT UNDER THE DEFEND TRADE SECRETS ACT

Further Plaintiffs have alleged in their First Amended Complaint that the information about Plaintiffs trading records, financial data is protected under the Defend Trade Secrets Act 18 USC §§ 1831 el seq. (see e.g. FAC - *ECF*15¶26-¶57). The DTSA provides for a federal, private, civil cause of action for trade-secret misappropriation in which "[a]n owner of a trade secret that is misappropriated may bring a civil action ,, . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. §§ 1831 *et seq*.

> 18 USC 1835 (b) Rights of Trade Secret Owners - The court may not authorize or direct the disclosure of any information the owner asserts to be a trade secret unless the court allows the owner the opportunity to file a submission under seal that describes the interest of the owner in keeping the information confidential.

Therefore consistent with 18 U.S.C. §§ 1835 (b)(a) once a party (plaintiffs) asserts information is trade secret the Court must permit the parties to file the information under seal until Plaintiffs have been afforded the ability to redact. This is consistent with Individual Rules 4 (a)(i) under Hon. Gregory Woods this information that is trade secret does not need the Court's permission to file under seal.

### Supporting Law Risk Management Data and Financial Data

Included in the above Exhibits are also specific data on the risk management and strategies of Plaintiffs. Courts in this district have ruled that "internal documents and unpublished drafts that contain non-public strategies and financial information constitute "confidential commercial information" under Federal Rule 26(c)(1)(g), particularly where the disclosing company is engaged in a highly competitive industry and deliberately has shielded such information from its competitors." *See, e.g., Fox News Network v. U.S. Dep't of Treas.,* 739 F.Supp.2d 515, 571 (S.D.N.Y.2010) (withholding draft containing proposed financial and risk reporting strategy); *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 415–416 (M.D.N.C.1991) ("Such commercial information, which

encompasses strategies, techniques, goals and plans, can be the lifeblood of a business [and] may also be particularly deserving of protection if the disclosing corporation is vulnerable to competitors."). New York v. Actavis, PLC, No. 14 CIV. 7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014) This also provided supporting reasons by the Exhibits would cause significant harm as Plaintiff Kumaran is also in a risk management consulting business uses risk management as a source of livelihood.

Protective orders routinely granted in this District that limit access to certain documents to counsel or select parties only are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information. *See Quotron Systems, Inc., v. Automatic Data Processing, Inc.,* 141 F.R.D. 37, 40 (S.D.N.Y.1992) (limiting disclosure to counsel and experts); *Culligan v. Yamaha Motor Corp.,* 110 F.R.D. 122, 126 (S.D.N.Y.1986) (limiting disclosure to plaintiff's counsel); *Stillman v. Vassileff,* 100 F.R.D. 467, 468 (S.D.N.Y.1984) (limiting disclosure to plaintiff's counsel); *Sullivan Marketing, Inc., v. Valassis Communications, Inc.,* 1994 WL 177795, at *2 (S.D.N.Y.1994) (limiting disclosure of documents relating to pricing and market strategies to outside counsel, their employees, and consultants retained for litigation because in-house counsel was sufficiently involved in competitive decision-making). *But see Princeton Management Corp., v. Assimakopoulos,* 1992 WL 84552 (S.D.N.Y.1992) (limiting access to documents regarding trade secrets to two specifically designated representatives of the plaintiff solely for the purposes of litigation).

### Consistency with Redactions in Related Case in this Court

In equity in related case 20-CV-3668 all **financial data** and terms (any terms of financial costs etc) were permitted to be redacted in the G&F Agreements. Plaintiffs also did not object to any **financial data,** pricing, costs and rates being redacted from the documents. (*See* 20-CV-3668 *ECF*62). The Court afforded broad redactions of sealings of Defendants for their commercially sensitive terms. In equity **Appendix Exhibits and Appendix_C_Exhibits** contains about 163 pages of detailed <u>financial data,</u> emails containing details of positions and trades and detailed financial screenshots of Plaintiffs account data from its proprietary CTA trading account which would cause significant competitive harm if placed into the public domain and reveal confidential workings of Plaintiffs trading account and strategies. Kumaran continues to be CTA and CPO and to build the Nefertiti companies and this publication and release would cause irreparable harm. A rebuttable

presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets") *Faiveley Transport Malmo AB v. Wabtec Corp.,*559 F.3d 110,118–19 (2d Cir.2009)

### Narrowly Tailored

Plaintiffs request is narrowly tailored to **financial and trading data** in Plaintiffs' commercial and competitive trading accounts. Kumaran and Nefertiti entities are using these accounts for competitive purpose as Commodities Trading Advisors. Kumaran and NAM to this date remain registered as CTA's and compete in trading and risk management activities. Kumaran's affiliates Timetrics still provide risk management services. They do not seek to redact general information in communications.

| Outbound Pleadings in 18-ARB-5 Document ID | Date Filed Jun 8, 2018 | |
|---|---|---|
| Master Summary Claim | 42 pages –Summary Complaint | No redactions |
| Appendix A | 65 pages – Rules violated | No redactions |
| Appendix 1 | 200 pages - Timeline | No redactions |
| Appendix B | 14 pages – Heating Oil Errors | No redactions |
| Appendix C | 24 pages – Crude Oil Errors | No confidential data in pleading (**\*\*Financial paper exhibits filed as C19, C24 and C25 attached to back redacted**) |
| Appendix H | 9 pages - Anti Money Laundering Errors | No redactions |
| Appendix K | Claims table | No redactions |
| **Appendix Exhibits\*\*** | **160 pages, including screenshots and financial data from NRCM's accounts** | **COMMERCIALLY SENSITIVE AND TRADE SECRET \*\*Contains account data** |

**Plaintiffs are only seeking the Appendix-Exhibits and 3 pages of Appendix-C-Supplemental Exhibits to be placed underseal or other documents that contain this information.[3] This meets the narrowly-tailored requirements consistent with this district. As can be seen from the table below, this is a narrow redaction as majority of the pleadings can be filed without any redactions at all.

### Additional Documents

Consistent with  Exhibit 3, ADMIS are working to determine which records each party has as it appears clear that the pleadings were not served as intended. **Plaintiffs records are different from Defendants.** Therefore according to the email received from ADMIS today, they never received the Exhibits that are the subject matter of this motion for sealing in their service from NFA. This also leads to material issues of fact that are before this Court. Until resolved, Plaintiffs respectfully request all disputed exhibits or missing exhibits are filed under seal until plaintiffs are afforded the chance to redact financial data. ADMIS also appear to have documents that Plaintiffs never issued as service and/or now claim they never received the documents that Plaintiffs served.

### Discrepancy in Pleadings

The discrepancy in the service of the entire Complaint is material and is consistent with earlier filings by that Plaintiffs alleged that motions and filings were not being served by NFA to the Panel or the Defendants. These are material facts related to impropriety in the Arbitration that need to be resolved. (see **Exhibit 3**). Until rectified, Plaintiffs also request that any additional documents or exhibits are filed under seal until the parties have the opportunity to rectify the discrepancies identified and redact financial data. **Plaintiff did serve ALL EXHIBITS in the TABLE** on the NFA in accordance with NFA Member Arbitration Rule 5(d) [4] and Plaintiffs have proof it was served completely to the NFA. (See e.g. **Exhibit 4 and 5**). NFA confirmed receipt of each exhibit and **NFA was responsible for service to ADMIS**. (Rule 5(d)). Plaintiffs have also alleged incidences of filings being not served properly or sent to the Panel and/or Defendants and being concealed by NFA. (*see* e.g. 20-CV-3873 *ECF*38 NRCM Mem Opp Pg,29, Pg.38-40, Pg.45, Pg.47, Pg. 54-55, Pg.59, Pg.63, Pg.66-67, Pg.69-71, See also Ver.OC.3668 ECF1 ¶150-¶261)

---

[3] Defendants responded that they do not appear to even have the attached documents as part of service. (*See* Exhibit 3)
[4] https://www.nfa.futures.org/rulebook/rules.aspx?Section=6

### ADDITIONAL PLEADINGS AND FILINGS

To the extent Defendants have any other documents or emails or letters or statements, they intend "pleadings" as it is not known what else was sent in services or which is being included Plaintiffs have requested that ADMIS first send Plaintiffs a copy so that they have the opportunity to redact and or in the abundance of caution file under seal in case Plaintiffs This includes any confidential and financially sensitive data about the ownership and financial control, of privately held which may be ADMIS' position, and request that data is also not published onto the public record. Plaintiffs have their own records of the pleadings.

### CONCLUSION FOR SEALING FINANCIAL DATA

For the above reasons, irreparable harm and substantial economic damage would occur if detailed financial transactions and data from Plaintiffs CTA accounts were to placed into the public record, that were filed as "Appendices" and "Exhibits" to the Pleadings. Therefore Plaintiffs NRCM and Kumaran respectfully seek leave that the Exhibits and Appendices are filed under seal and that any other data that discloses financial information in NRCM's accounts is also redacted or filed under seal. This does not impact the majority of the pleadings filed, but specifically the tables of exhibits or sub-divisions thereof which include details of NRCM's account screenshots, positions values, and transactions. The two specific documents sought to be protected that Plaintiffs have found are "Appendix-Exhibits" –and "Appendix-C-Supplemental-Exhibits." ADMIS apparently seem to be missing them or have only parts of them. This should apply to any other versions partial that ADMIS have. There is material discrepancy in the outbound pleadings. ADMIS claim they do not even have completed versions of the pleadings that Plaintiffs seek to be filed under seal, even though Plaintiffs served them. (See Exhibit 3)

### NRCM, NAM and Nefertiti Entities and Affiliates

In the interest of efficiencies NRCM, NAM and all Nefertiti Entities (Intervenors) and any other affiliates, join and support the above legal arguments above and seek the foregoing confidential financial data redacted and filed under seal.

Thank you.

Respectfully submitted,

//SSK//                                      //BMA//

Samantha Siva Kumaran                        Brian M. August
                                             Counsel for NRCM, NAM and NHC
                                             Brian August, Esq
                                             AugustLawNYC
                                             100 Willoughby Street 9E
                                             Brooklyn, NY 11201
                                             (917) 664-4465
                                             bmaugust61@gmail.com
                                             www.augustlawnyc.com