```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/7/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Samantha Siva Kumaran and Nefertiti Risk Capital Management, LLC,

                              Plaintiffs,

        -against-

ADM Investor Services, Inc.,

                            Defendant.

1:20-cv-03873 (GHW) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

    Plaintiffs Samantha Siva Kumaran ("Kumaran") and Nefertiti Risk Capital Management, LLC ("NRCM") (together, "Plaintiffs") bring this action against Defendant ADM Investor Services, Inc. ("ADMIS" or "Defendant") asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*., the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. and various state laws. (Am. Compl., ECF No. 15; *see also* 2/10/2021 Order, ECF No. 36.) Plaintiffs allege that, beginning in or around September 2014, ADMIS and others[1] perpetuated a fraudulent scheme to induce customers to open accounts with ADMIS and then utilized those accounts to engage in unfair market competition by, *inter alia*, improperly

---

[1] Plaintiffs allege that Robert Boshnack, Howard Rothman and John Felag instigated this scheme for their benefit and the benefit of their companies, including Vision Financial Markets, LLC and its affiliates. (Am. Compl. ¶¶ 1-10.) Plaintiffs further allege that the scheme was carried out through numerous Introducing Brokers ("IBs") associated with Vision and its affiliates, and that Howard, Rothman and Felag formed a competing Commodity Trading Adviser called Vision Investment Advisors, Inc. to use customer information from ADMIS to compete directly with Plaintiffs. (*Id*. ¶¶ 3, 5, 8.) Plaintiffs have filed a similar lawsuit in this Court against Boshnack, Rothman, Felag and various Vision affiliates and IBs, as well as a lawsuit against the National Futures Association ("NFA"). *See Kumaran et al. v. National Futures Association et* al. No. 20-CV-03668 (S.D.N.Y.); *Kumaran et al. v. Vision Financial Markets, LLC et al*. No. 20-CV-03871 (S.D.N.Y.).

acquiring, using and disseminating customer's trade secrets, withdrawing profits and deducting unauthorized fees. (Am. Compl. ¶¶ 1-8.)

Now before the Court is a motion by ADMIS to compel arbitration of Plaintiffs' claims and dismiss this action. (Mot. to Compel Arb., ECF No. 21.) Also before the Court is a motion by Nefertiti Asset Management, LLC ("NAM") and Nefertiti Holding Corporation ("NHC") to intervene as Plaintiffs. (Mot. to Intervene, ECF No. 48.) For the reasons set forth below, Defendant's motion to compel arbitration is GRANTED IN PART and DENIED IN PART and this action is STAYED pending arbitration and the motion by NAM and NHC to intervene is DENIED.[2]

## BACKGROUND

**I.    NRCM Relationship With ADMIS**

ADMIS has been a member of the NFA—a self-regulatory agency for the futures industry—since 1982. (Decl. of Greg Hostetler, dated Dec. 1, 2020, ECF No. 22-1 (hereinafter "Hostetler Decl."), ¶ 3.) On January 18, 2017, NRCM, through Kumaran as its Managing Member, opened an account with ADMIS and signed an arbitration agreement (the "ADMIS Arbitration Agreement"). (*See* ADMIS Customer Agmt., Hostetler Decl. Ex. A; ADMIS Arb. Agmt., Hostetler Decl. Ex. B.) On April 7, 2017, NRCM registered with the NFA as a Commodity Trading Adviser

---

[2] "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." *McCants v. Team Elec., Inc.*, No. 19-CV-09565 (AJN) (RWL), 2021 WL 653122, at *1 n.1 (S.D.N.Y. Feb. 19, 2021) (quoting *Chen-Oster v. Goldman Sachs*, 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases)). Similarly, "[b]ecause it is a nondispositive motion, a Magistrate Judge can rule on a motion to intervene and is not limited to recommending a disposition." *Grewal v. Cueno*, No. 13-CV-06836 (RA) (HBP), 2014 WL 2095166, at *1 n.1 (S.D.N.Y. May 20, 2014) (citing cases).

("CTA")[3] and Kumaran registered as a Principal and Associated Person of NRCM.[4] (*See* Kumaran BASIC Database History, ECF No. 43-2; NRCM BASIC Database History, ECF No. 22-2; *see also* Decl. of Daryl M. Schumacher, dated Dec. 1, 2020, ECF No. 22-3 ("Schumacher Decl."), ¶ 3.) On May 23, 2017, the NFA approved NRCM as a member and approved Kumaran as an Associate Member. (*See id*; *see also* Kumaran Decl. 1, dated March 29, 2021, ECF No. 43, ¶ 30.) On May 24, 2017, ADMIS moved to close NRCM's account and all funds were withdrawn from the account on or around June 20, 2017. (Kumaran Decl. 1 ¶ 31; Kumaran Opp. Mem., ECF No. 37, at 2.)

**II.   NFA Arbitration Commenced By NRCM Against ADMIS**

On or about June 15, 2018, NRCM initiated a Member versus Member NFA arbitration against ADMIS and others pursuant to the Member Arbitration Rules (the "NRCM Arbitration"). (*See* Hostetler Decl. ¶ 5; *see also* NRCM Arb. Claim., ECF No. 57-2.) The NFA appointed a three-person panel of arbitrators (the "Arbitration Panel") to hear and decide the NRCM Arbitration. On November 13, 2019, in response to NRCM's "numerous references to alleged claims against the NFA," the Arbitration Panel issued an Order allowing NRCM to request a stay in order to proceed against the NFA in U.S. District Court. (11/13/20219 Panel Order, Hostetler Decl. Ex. C, ECF No. 22-1, at 13-14.) The Order also stated that "the dispute between the parties being members of the NFA [*i.e.* NRCM and ADMIS] shall remain in this arbitration forum." (*Id*. at 14.)

---

[3] A CTA "is an individual or firm that provides individualized advice regarding the buying and selling of futures contracts, options on futures, or certain foreign exchange contracts." *See What Is a Commodity Trading Advisor (CTA)?*, https://www.investopedia.com/terms/c/cta.asp (last visited June 7, 2021). With few exceptions, CTAs must register with the NFA. *See id.*; *see also CTA Registration*, https://www.nfa.futures.org/registration-membership/who-has-to-register/cta.html (last visited June 7, 2021).

[4] An Associated Person is "[a]n individual who solicits orders, customers or customer funds (or who supervises persons so engaged) on behalf of[,]" *inter alia*, a CTA. Registration and Membership, https://case.nfa.futures.org/registration-membership/index.html (last visited June 7, 2021).

3

Thereafter, NRCM moved to stay the arbitration and, on November 18, 2019, the Arbitration Panel granted NRCM's request. (11/18/2019 Panel Order, Hostetler Decl. Ex. D, ECF No. 22-1, at 21.). In their Order, the Arbitration Panel stated that the "stay shall become permanent if not lifted by November 13, 2020." (*Id*.) On May 18, 2020, Kumaran filed the instant action. *See* Background Section III, *infra*. On November 12, 2020, NRCM filed a motion to extend the stay in the NRCM Arbitration, which ADMIS opposed.  (See Notice of Arb. Order, ECF No.  29 (referencing prior motions).) On January 25, 2021, the Arbitration Panel denied NRCM's motion to extend the stay and ordered that the arbitration was "permanently stayed until such time a court instructs NRCM it must arbitrate at NFA." (*See* Notice of Arb. Order, ECF No.  29.)

### III.     The Instant Action

On May 18, 2020, Kumaran, proceeding *pro se*, filed the instant action against ADMIS. (*See* Compl., ECF No. 1.) Kumaran purported to assert claims on behalf of herself and NRCM, along with approximately 100 CTAs. (*See id*.) On August 20, 2020, the Court dismissed the claims of all Plaintiffs except for Kumaran, on the ground that Kumaran, as a *pro se* litigant, could not bring claims on their behalf. (Order of Service, ECF No. 11.) Kumaran filed an Amended Complaint on October 1, 2020, in which she alleged that NRCM was dissolved and was not asserting any claims and that she was "successor in interest to any so-called contract with ADMIS." (Am. Compl., ECF No. 15, ¶¶ 24-25.) On December 1, 2020, ADMIS filed the motion to compel arbitration that is now before the Court. (Mot. to Compel Arb., ECF No. 21.)

On December 22, 2020, attorney Brian August filed a Notice of Appearance in this action on behalf of NRCM. (*See* Notice of Appearance, ECF No. 23.) During a telephone conference with the parties, including Mr. August, on February 10, 2021, the Court granted what it deemed to be

4

an oral application by Kumaran to add NRCM as a Plaintiff and to amend her pleading. (*See* 2/10/2021 Order, ECF No. 36, ¶ 1.) Thus, pursuant to the February 10 Order, paragraph 24 of the Amended Complaint was amended to allege, as follows: "NRCM has been dissolved and is named as a plaintiff herein to preserve any claims that it may have." (*Id*.)

After the instant motion was fully briefed,[5] NAM and NHC, represented by Mr. August, filed a motion to intervene as plaintiffs. (*See* Mot. to Intervene, ECF No. 48.)

### DISCUSSION

**I.     Motion To Compel Arbitration**

**A.     Legal Standards**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).[6] "Enacted to reverse centuries of judicial hostility to arbitration agreements, the FAA embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]" *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 100 (S.D.N.Y. 2017) (citing *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 119 (2d Cir. 1991); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)) (internal quotation marks and alterations omitted); *see*

---

[5] On May 7, 2021, Plaintiffs sought leave to file a sur-reply in response to what they assert were new facts and arguments raised in ADMIS's reply. (Letter Motion, ECF No. 45.) However, because I do not rely on any facts or arguments raised for the first time in reply, Plaintiff's motion is denied as moot.

[6] The parties do not dispute that the agreements at issue here affect interstate commerce such that the FAA applies. (*See, e.g.*, Def.'s Mem. ECF No.22, at 3 (invoking FAA); NRCM Opp. at 3 (same); Kumaran Opp. at 5 (same).)

*also Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution.").

Section 2 of the FAA provides, in relevant part, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quoting *AT & T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986)). "Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements in accordance with § 2 of the FAA." *Sanders v. Forex Cap. Markets, LLC*, No. 11-CV-00864 (CM), 2011 WL 5980202, at *5 (S.D.N.Y. Nov. 29, 2011) (citing, *inter alia*, *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)).

"Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation and compel arbitration." *McCants*, 2021 WL 653122, at *3 (citing FAA §§ 3, 4). "In deciding whether claims are subject to arbitration, courts consider: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." *Zilong Wang v. Zhihui Guo*, No. 19-CV-02884 (PGG), 2020 WL 4937481, at *5

6

(S.D.N.Y. Aug. 22, 2020) (citations omitted); *see also Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008).

"In deciding a motion to compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179-80 (2d Cir. 2021) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). "Courts must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and must draw all reasonable inferences in favor of the non-moving party." *Id.* (internal citation, quotation marks and alterations omitted).

**B.   Analysis**

ADMIS argues that two separate agreements to arbitrate govern this dispute: (1) an agreement by Kumaran and NRCM, as NFA members, to abide by the NFA Member Arbitration Rules, and (2) the ADMIS Arbitration Agreement—the written agreement to arbitrate between Kumaran, on behalf of NRCM, and ADMIS. (Def.'s Mem. at 7.) Kumaran and NRCM argue that they were not NFA Members during the relevant time period and, thus were not subject to the Member Arbitration Rules. (NRCM Opp. at 5-8, 13-14; Kumaran Opp. at 26-30.) With respect to the ADMIS Arbitration Agreement, NRCM argues that it should not be enforced on various grounds and Kumaran argues that it cannot be enforced against her as a non-signatory with respect to her individual claims. (NRCM Opp. at 8-13; Kumaran Opp. at 18-22.) For the reasons set forth below, I find that, by initiating arbitration against ADMIS, NRCM agreed to arbitrate its claims, regardless of any prior agreement to do so, and/or has waived any argument as to the enforceability of the arbitration agreement or the authority of the arbitrator. I also find that,

7

although Kumaran is not bound to arbitrate any individual claims she might have, there is significant factual overlap between any such claims and NRCM's claims such that a stay of the entire action pending arbitration is warranted.

### 1.     NRCM Must Arbitrate Its Claims Against ADMIS

As an initial matter, the Court finds that NRCM cannot challenge the arbitrability of its claims because it initiated the arbitration against ADMIS. (*See* NRCM Arb. Claim, ECF No. 57-2.) Thus, separate and apart from any written agreement to arbitrate, NRCM, through its conduct, has agreed to arbitrate its claims or, at the very least, has waived its right to challenge the arbitration agreement or the authority of the arbitrator. *See Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 809 (2d Cir. 1960) (". . . the parties herein have voluntarily submitted their dispute to arbitration, thus evincing a subsequent agreement for private settlement which would cure any defect in the arbitration clause."); *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697 (6th Cir. 2019) (party that demands arbitration waives its ability to challenge arbitration agreement); *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) (same); *see also Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Loc. No. 1*, 611 F.2d 580, 584 (5th Cir. 1980) ("On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute.").

Moreover, not only did NRCM initiate the arbitration, it went on to participate in arbitration for at least a year and a half[7] without challenging the jurisdiction of the arbitrator.[8] "[I]f a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration." *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003); *see also ConnTech Dev. Co. v. Univ. of Connecticut Educ. Properties*, Inc., 102 F.3d 677, 685 (2d Cir. 1996) ("An objection to the arbitrability of a claim must be made on a timely basis, or it is waived."); *Int'l Longshoremen's Ass'n, AFL-CIO v. W. Gulf Mar. Ass'n*, 594 F. Supp. 670, 674 (S.D.N.Y. 1984) ("One who voluntarily participates in arbitration will not thereafter be heard to complain that the arbitrator was without authority to act."); *Pike v. Freeman*, 266 F.3d 78, 89 (2d Cir. 2001) ("Arbitration is not a trial run in which a party may sit quietly by without raising pertinent issues, wait to see if the result is in his favor and then seek judicial relief as an afterthought.").

In sum, NRCM "cannot have [its] cake and eat it too." *Mays v. Lanier Worldwide, Inc.*, 115 F. Supp. 2d 1330, 1343 (M.D. Ala. 2000) (plaintiff who initiated arbitration barred from claiming unenforceability of arbitration clause) (citing *Piggly Wiggly*, 611 F.2d at 584). To allow a party to pursue arbitration and then later, after it is unhappy with the way arbitration is unfolding,

---

[7] NRCM submitted its Arbitration Claim on April 9, 2018 and arbitration continued through at least November 18, 2019 when the Panel first entered a stay. (*See* NRCM Arb. Claim, ECF No. 57-2; Hostetler Decl. ¶¶ 5, 7.)

[8] The Court notes that "the proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move the district court for a stay of arbitration." *Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*, 752 F. Supp. 638, 639 (S.D.N.Y. 1990) (citing *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698 (2d Cir. 1985)). NRCM did not invoke such procedure here, which, in any event, would not have made any sense since NRCM initiated arbitration in the first instance.

challenge whether it had ever agreed to arbitrate, would run contrary to the clear policy favoring arbitration. *Cf. Halley Optical Corp.*, 752 F. Supp. at 639-40 (party that did not properly challenge whether it was subject to arbitration agreement could not raise that argument in proceeding regarding arbitration award); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 626 (1985) ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

### 2. Any Individual Claims That Kumaran May Have Are Not Subject To Arbitration, But Are Stayed

ADMIS argues that Kumaran should be compelled to arbitrate because she was a member of the NFA and the signatory, albeit on behalf of NRCM, of the ADMIS Arbitration Agreement. (Def.'s Mem. at 5-8.) For the reasons set forth below, the Court finds that Kumaran is not bound to arbitrate any claims that she may have against ADMIS as an individual, rather than as the Managing Member of NRCM.[9] However, given the significant factual overlap between any claims Kumaran may have as an individual and NRCM's claims against ADMIS, the Court, in its discretion will stay any such claims pending the outcome of the arbitration between NRCM and ADMIS.

---

[9] ADMIS points out that all of Kumaran's claims arise out of NRCM's relationship with ADMIS and alleged misuse of information relating to NRCM's account. (*See* Def.'s Mem. at 9-10.) While it is not clear that Kumaran, individually, has stated a claim against ADMIS, the Court presently does not have before it a motion by ADMIS to dismiss under Federal Rule of Civil Procedure 12(b)(6). Rather, ADMIS stated that it "reserve[d] the right to assert Ms. Kumaran's lack of standing at a later date as those arguments would not be appropriate in the context of [its] Motion to Compel Arbitration." (ADMIS Reply, ECF No. 44, at 19 n.9.) Thus, the Court does not consider at this time whether any plausible claims have been pled by Kumaran, individually.

At the outset, the Court notes that Kumaran did not sign the ADMIS Arbitration Agreement (or Customer Agreement) in an individual capacity, but signed as Managing Member of NRCM. In these circumstances, Kumaran did not contractually agree to arbitrate any individual claims she might have. Moreover, Kumaran, as an individual, is not a party to the NRCM Arbitration, nor does the arbitration raise any claims she may have in her individual capacity. (*See* NRCM Arb. Claim, ECF No. 57-2.)

ADMIS relies upon NFA Rule 301 to argue that, as an NFA member, Kumaran was bound to arbitrate her individual claims against ADMIS. (*See* Def.'s Mem. at 5-6.) Under NFA Rule 301, by filing her application for membership, Kumaran agreed that, "whenever admitted to NFA membership or registered as an Associate," she "bec[a]me and remain[ed] bound by all NFA requirements, including . . . [the] Code of Arbitration and Member Arbitration Rules as then and thereafter in effect." *See* NFA Rule 301(f)(ii)(C). However, Kumaran was not approved as an NFA member until May 23, 2017 and ADMIS moved to close the NRCM account a day later. (*See* Kumaran Decl. 1 ¶¶ 30-31.) In circumstances where ADMIS's allegedly unlawful conduct vis-à-vis Kumaran, individually (if any), occurred prior to her becoming bound to the NFA Member Arbitration Rules, the Court finds that Kumaran did not agree to arbitrate any of her individual claims.

In any event, the Court finds that the scope of any agreement to arbitrate imposed upon Kumaran by her having become an NFA member would not encompass the individual claims she had prior to the time she became a member, which relate to purported fraud and theft of her intellectual property. *See Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (when considering motion to compel arbitration, courts must resolve "(1) whether the parties

11

agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue."). For the foregoing reasons, the Court finds that Kumaran is not bound to arbitrate any individual claims she may have against ADMIS.[10] Regardless, given the significant factual overlap between any claims Kumaran may have as an individual and NRCM's claims against ADMIS, the Court, in its discretion will stay this action pending the outcome of the arbitration between NRCM and ADMIS.

"[D]istrict courts . . . may stay a case pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Katsoris,* 237 F. Supp. 3d at 110 (quoting *WorldCrisa v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997)). "The Court must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." *Id*. (citation omitted). "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." *Katsoris*, 237 F. Supp. 3d at 110-11 (citing, *inter alia*, *Moore v. Interacciones Glob., Inc.*, No. 94-CV-04789 (RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995) ("It is well-settled that claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants.")). "In such cases, a stay is warranted in part because the prior litigation or arbitration is likely to have preclusive effect over some or all of the claims

---

[10] Notwithstanding the foregoing, to the extent that Kumaran asserts any claims as a successor in interest to NRCM, she is bound to arbitrate such claims. *Cf. Nat'l Union Fire Ins. Co. v. Stucco Sys., LLC*, 289 F. Supp. 3d 457, 467 (S.D.N.Y. 2018) (successor-in-interest to signatory of arbitration agreement could be compelled to arbitrate claims).

12

not subject to arbitration." *Id*. at 111 (citing *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 846 F.3d 35, 55 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration.")).

Considering the relevant factors, the Court finds that a stay pending arbitration is warranted. Any claims that Kumaran may have in an individual capacity against ADMIS relate to NRCM's account with ADMIS. Accordingly, the "issues that the arbitration panel will decide . . . overlap significantly (if not entirely) with the issues that this Court would need to reach to adjudicate" Kumaran's individual claims. *See Winter Invs., LLC v. Panzer*, No. 14-CV-06852 (KPF), 2015 WL 5052563, at *12 (S.D.N.Y. Aug. 27, 2015) (granting discretionary stay); *see also Katsoris*, 237 F. Supp. 3d at 111 (granting discretionary stay pending outcome of arbitration between certain parties); *Zilong Wang*, 2020 WL 4937481, at *8 (stay appropriate when alleged fraudulent investment scheme formed basis for all claims). Moreover, there appear to be conflicting factual allegations regarding at least some of the intellectual property that is the basis for Plaintiffs' trade secrets claims. In this action, Kumaran contends that she personally owned the STORM Trading Program (*see, e.g.*, Am. Compl. ¶¶ 21-22, 48, 51, 53; Kumaran Opp. at 14 ("NRCM has no claims related to the intellectual property"), 16-17), while in the NRCM Arbitration, NRCM asserts that "[t]he STORM Trading Program and its transaction records are the valuable trade secret of NRCM." (NRCM Arb. Stat. Facts, ECF No. 57-10, ¶¶ 6, 12.) Thus, any decision by the Court on the merits of these claims could undermine the NRCM Arbitration. *See Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd.*, 640 F. Supp. 175, 178-79 (S.D.N.Y. 1986) (staying claims not subject to arbitration because arbitration would "provide the court with insight into the issues of law and

fact," and any decision by the court on the merits "would thwart the federal policy in favor of arbitration of disputes by rendering the arbitrator's [decision] meaningless.").

**II.    Motion To Intervene**

On May 10, 2021, after Defendant moved to compel arbitration, NAM and NHC moved to intervene. (*See* Mot. to Intervene.) On May 14, 2021, ADMIS opposed the motion.[11] (ADMIS 5/14/21 Ltr. Resp., ECF No. 50.) NAM and NHC contend that, if they are not permitted to intervene in this action, they will be prejudiced by ADMIS's "ongoing unfair competitive use of the STORM [Trading Platform]" and will suffer economic harm as a result of ADMIS's conduct.[12] (*See* Mot. to Intervene, ECF No. 48, at 17-18.) NAM and NHC argue that they are entitled to intervention as of right and, in the alternative, permissive intervention.[13] (*See id*. at 15-25; *see also* Pl.'s Response.)

**A.    Legal Standards**

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides for intervention as of right to anyone who, on timely motion, "claims an interest relating to the property or transaction that

---

[11] In contrast, in the related action *Kumaran et al. v. Vision Financial Markets, LLC et al*., the defendants consented to having NAM and NHC intervene. (*See* 4/30/21 Order, 20-CV-3871 ECF No. 69; 5/28/2021 Order, 20-CV-03871 ECF No. 72.) Thus, while NAM and NHC argue that they should be allowed to intervene for the sake of efficiency (*see* Pl.'s Response, ECF No. 62, at 1), the issues before the Court are not the same and any efficiency benefits do not outweigh the considerations set forth herein.

[12] The Court need not, and does not, address the issue of what plausible claims, if any, may be pled by NAM and NHC, as distinct from claims that Kumaran and/or NRCM may have. For example, as noted earlier, it has been alleged in this action that Kumaran personally owns the STORM Trading Program and in the NFA Arbitration that NRCM owns such program. (*See* Discussion Section I.B.2, *supra*.) There is no allegation that NAM and NHC own the STORM Trading Program.

[13] In their motion, NAM and NHC also seek to have their claims relate back to the date of the filing of the original Complaint. (Mot. to Intervene at 1, 10-14.) NRCM also seeks relation back. (*See id*.) Because, as set forth herein, the motion to intervene by NAM and NHC in this action is denied, I do not address relation back as to those entities. As for NRCM, the Court repeatedly has said that it will address relation back as and when it addresses statute of limitations issues.

is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, the intervenor must: (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001). "Failure to meet any one of these requirements suffices for a denial of the motion." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197-98 (2d Cir. 2000) (citation omitted).

Permissive intervention is governed by Rule 24(b), which provides that, on timely motion, intervention may be permitted to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The district court's discretion under the permissive intervention rule "is very broad." *Drongosky v. Flynn*, No. 01-CV-0371A (SR), 2004 WL 941664, at *5 (W.D.N.Y. Jan. 26, 2004) (citing *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)). "A motion for permissive intervention, like one for intervention of right, must be timely." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 391 (2d Cir. 2006) (citing *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996)).

Rule 24(c) sets forth the procedural requirements for a motion to intervene. A third party must serve the motion upon the parties to the action and "[t]he motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Failure to comply with rese requirements can be grounds to deny a motion to intervene. *See, e.g.*, *G-I Holdings, Inc. v. Baron & Budd*, No. 01-CV-00216 (RWS), 2002 WL 1822929, at *1 (S.D.N.Y. Aug. 7, 2002) (citations omitted). However, "a

court may approve an intervention motion that is not accompanied by a pleading if the court is otherwise apprised of the grounds for the motion." *Penn Lyon Homes, Inc. v. Liberty Mut. Ins. Co.*, No. 00-CV-01808 (RNC), 2001 WL 789200, at *1 (D. Conn. May 14, 2001) (citing 6 Moore's Federal Practice § 24.20); *see also Briscoe v. City of New Haven*, No. 09-CV-01642 (CSH), 2012 WL 13026762, at *5 (D. Conn. Oct. 5, 2012) ("Where . . . the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements.") (citing *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002)).

### B. Analysis

To start, because NAM and NHC have not accompanied their motion with a proposed pleading, the Court cannot determine which claims these entities intend to assert against ADMIS. Unlike in other cases where the technical requirements have been excused, here, the position of NAM and NHC in this action is not clear from other filings. For example, there is no indication that NAM or NHC had a separate account with ADMIS or that they are the separate owners of any trade secrets that ADMIS allegedly misappropriated. (*See*, *e.g.*, Am. Compl. ¶ 53.) Notably, in their motion to intervene, NAM and NHC refer to potential claims against the defendants in the related case of *Kumaran et al. v. Vision Financial Markets, LLC et al.*, No. 20-CV-03871. (*See* Mot. to Intervene at 22.) Accordingly, on the current record, NAM and NHC have not met their burden to show an interest in *this* action that would be impaired absent their intervention.[14]

---

[14] The Court also notes that, to the extent that NHC and NAM may assert claims stemming from NAM's role as a competing CTA or Commodity Pool Operator, any such claims likely would have arisen after they applied to be NFA members and, thus, would be subject to NFA Member Arbitration Rules, including the requirement to arbitrate any disputes with other members, such as ADMIS. *See* NFA Member Arbitration

In any event, the Court denies the motion to intervene because it is untimely. This action was filed in May 2020 and NAM and NHC waited until almost a year later, after Defendant's motion to compel arbitration was filed, to seek to intervene. NAM and NHC were formed by Kumaran herself (*see* Am. Compl. ¶ 54) and thus were aware of any interest they had in this action at the time it was commenced. Moreover, as ADMIS points out, NAM and NHC could have moved to intervene at the same time as NRCM and did not do so. Accordingly, the Court, in its discretion, finds that the motion to intervene was not timely made. *See Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 591 (S.D.N.Y. 2018) ("Timeliness is not defined by the Rule, and is therefore left largely to the court's discretion which must be guided by consideration of all of the circumstances surrounding the requested intervention." (citation omitted)).

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to compel arbitration is GRANTED IN PART and DENIED IN PART and this action is hereby STAYED pending arbitration. The motion by NAM and NHC to intervene is DENIED. The parties shall file a joint status report no later than December 31, 2021 or within ten days following completion of the NRCM Arbitration, whichever is earlier.

---

Rules, Section 2(a) ("disputes between and among Members shall be arbitrated under these rules"), available at www.nfa.futures.org/rulebook/rules.aspx?Section=6 (last visited June 7, 2021).

**SO ORDERED.**

Dated: New York, New York
June 7, 2021

_____
STEWART D. AARON
United States Magistrate Judge