IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA SIVA KUMARAN | Case No:1:20:CV:03873-GHW-SDA |
| NEFERTITIT RISK CAPITAL | Related Case: 1: 20:CV:03668 |
| MANAGEMENT, LLC | Related Case: 1: 20:CV:03871 |
| | |
| *Plaintiffs,* | **PLAINTIFF KUMARAN'S** |
| | **MOTION AND MEMORANDUM** |
| -against- | **FOR CLARIFCATION** |
| | **AND RECONSIDERATION OF** |
| ADM Investor Services, Inc | **(ECF90 / ECF97)** |
| *Defendant,* | |
| | **ORAL ARGUMENT REQUESTED** |

**PLAINTIFF KUMARAN'S MOTION AND MEMORANDUM FOR CLARIFCATION
AND RECONSIDERATION OF (ECF90/ECF97)**


**ORAL ARUMENT REQUESTED AT THE COURT'S DISCRETION PURSUANT TO
LOCAL RULE 6. 3**


**Submitted by**

Samantha S. Kumaran
Pro Se Plaintiff
samantha@timetricsrisk.com

212-431-5098
119 West 72nd Street #204
New York, NY 10023

## TABLE OF CONTENTS

I – INTRODUCTION…………………………………………………………..…Pg. 1

II – LEGAL STANDARD………………………………………………………...Pg. 1

III. CLARIFICATION ISSUES

    1.  Clarification 1 – Kumaran is the Sole Party to the FAC………………………….. Pg. 2

    2.  Clarification 2 – ADMIS tries to remove the stay……... …………………………Pg.9

    3.  Clarification 3 – Res Judicata and Collateral
        Estoppel…………………………………………………………………………..Pg.11

    4.  Clarification 4 – Conflicts of Interest…………………………………………….Pg.15

    5.  Clarification 5 – Error in Fact on the Overlapping Fraud in Related Actions………Pg.16

    6.  Clarification 6 – 7 U.S.C 25(b)………………………………………….………..Pg.19

    7.  Clarification 7—9 U.S.C. 2………………………………………………………Pg.22

    8.  Clarification 8  - 9 U.S.C. 4……………  …………………………………….Pg. 24

IV – STANDING…………………………………………………………………Pg.25

V – CONCLUSION………………………………………………………………Pg. 26

# TABLE OF AUTHORITIES

*Abreu v. Fairway Mkt. LLC, No. 17-CV-9532, 2018 WL 3579107,* at *1 (S.D.N.Y. July 24, 2018).

*Alexander v. Gardner–Denver Co., 415 U.S. 36, 56, 94 S.Ct. 1011, 1023, 39 L.Ed.2d 147 (1974)*

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 138 (C.A.2 (N.Y.),2007*

*Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 629–31, 129 S. Ct. 1896, 1901–02, 173 L. Ed 2d 832 (2009)*

*Bankers Life & Casualty Co. v. Crenshaw, 486 U.S. 71, 78, n. 2, 108 S.Ct. 1645, 1650, n. 2, 100 L.Ed.2d 62 (1988)*

*Barrentine v. Arkansas–Best Freight Sys., 450 U.S. 728, 742–45, 101 S.Ct. 1437, 1445–47, 67 L.Ed.2d 641 (1981)*

*Benson v. Unique Concepts, Inc., Civ.Act. No. 86–2038–s, slip. op. (D.Kan.1986)*

*BP P.L.C. v. Mayor & City Council of Baltimore, 141 S. Ct. 1532, 1537, 209 L. Ed. 2d 631 (2021)*

*Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 336, 464 N.Y.S.2d 712, 451 N.E.2d 459*

*Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 147, 89 S.Ct. 337,21L.Ed.2d 301[1968]).*

*Coventry Cap. US LLC v. EEA Life Settlements Inc., 439 F. Supp. 3d 169, 176 (S.D.N.Y. 2020)*

*Dewey v. Des Moines, 173 U.S. 193, 197–198, 19 S.Ct. 379, 380–381, 43 L.Ed. 665 (1899)*

*Garten v. Kurth, 265 F.3d136 (2d Cir. 2001)*

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, 140 S. Ct. 1637, 207 L. Ed. 2d 1 (2020)*

*Grunewald v. Metropolitan Museum of Art, 125 AD3d 438, 3 N.Y.S.3d 23 [1st Dept.2015] )*

*First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)*

Page iv

*Frey v. Bekins Van Lines, Inc.*, No. CV 09–5430, 2012 WL 2701642, at *1 (E.D.N.Y. July 5, 2012)

*Fulani v. Bentsen*, 35 F.3d 49 (2d Cir. 1994)

*Fulani v. Brady*, 149 F.R.D. 501, 503 (S.D.N.Y. 1993)

*GE Energy S. Ct. 1637, 207 L. Ed. 2d 1 (2020).*

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 848 (2d Cir. 1987)

*Hollander v. Members of the Bd. of Regents*, 524 Fed.Appx. 727, 729 (2d Cir. 2013)

*In re Ditech Holding Corp.*, No. 19-10412, 2021 WL 5762951, at *8 (Bankr. S.D.N.Y. Dec. 3, 2021)

*Leesona Corp. v. Cotwool Mfg. Corp.*, 315 F.2d 538, 542 (4th Cir.1963)

*Luv n' Care Ltd. v. Goldberg Cohen, LLP*, No. 15-cv-9248, 2016 WL 6820745, at *1 (S.D.N.Y. Nov. 10, 2016)

*McDonald v. City of West Branch*, 466 U.S. 284, 290, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984)

*Mitsubishi*, 105 S.Ct. at 3355, 3358–60

*Nanomedicon, LLC v. Research Foundation of State Unv. of New York*, 112 AD3d 594, 596, 976 N.Y.S.2d 191[2nd Dept.2013]

*Niz-Chavez v. Garland*, 593 U.S., 141 S.Ct. 1474, 1479–1480, L.Ed.2d (2021)

*Perry v. Thomas*, 482 U.S. 483, 493, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

*Rutty v. Esagoff*, No. 17-CV-1485, 2017 WL 2178432, at *2 (E.D.N.Y.May 17, 2017)

*Sam Wong &Son v. New York Mercantile Exch.*, 735 F.2d 653 (2d Cir 1984)

*State of Cal. Pub. Employees' Retirement Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434–435, 718 N.Y.S.2d 256, 741 N.E.2d 101

*Triple A Maint. Corp. v. Bevona*, 657 F. Supp. 1171, 1173 (S.D.N.Y. 1987)

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)

## MEMORANDUM OF LAW

### I - INTRODUCTION

On February 18, 2022 the Court issued an Order overruling objections to a motion for reconsideration and clarification filed as an Appeal to the District Judge. (ECF90). The Order was as a result of an in-person conference which took place at 500 Pearl Street on February 18, 2022 at 1pm. In attendance were myself, Mr. Schumacher and Mr. August. During the conference the Court dictated orally from the bench additional parts of the Court's rulings. ("Bench Order")  (ECF97 is the transcript of that conference, referred to herein as "Tr."). ECF97 is incorporated into the Order ECF90 as stated on the record. Collectively ECF97 and EC90 are referred to as the Feb 18 Order. Other pertinent background of facts and procedures to this case is assumed elsewhere on the record and not repeated herein.

### II - LEGAL STANDARD

The Feb 18 Order contains multiple issues itemized below, that Plaintiff seeks clarification on. Further Plaintiff submits new evidence pursuant and are identified mistakes pursuant to Rule 60(b). In the alternative, Plaintiffs seek reconsideration and clarification pursuant to Local Rule 6.3 and Rule 59(e). In addition the wording of the Order, in particularly the Bench Order, has led to substantial differences of opinion, and a slew of filings at the NFA Arbitration for which clarification is also needed. Ms. Kumaran is the sole representative in the Arbitration and also the third party beneficiary to all these arrangements with ADMIS.

In the Second Circuit, there are only three grounds which may be used to grant a motion for reconsideration [or reargument]: (1) a subsequent change in the law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. *Frey v. Bekins Van Lines, Inc.*, No. CV 09–5430, 2012 WL 2701642, at *1 (E.D.N.Y. July 5, 2012) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *accord Luv n' Care Ltd. v. Goldberg Cohen, LLP*, No. 15-cv-9248, 2016 WL 6820745, at *1 (S.D.N.Y. Nov. 10, 2016) (quoting *Hollander v. Members of the Bd. of Regents*, 524 Fed.Appx. 727, 729 (2d Cir. 2013) (summary order)) *Fulani v. Brady, 149 F.R.D. 501, 503 (S.D.N.Y. 1993), aff'd sub nom. Fulani v. Bentsen, 35 F.3d 49 (2d Cir. 1994)*

The Exhibits attached support Prong (2) - which is the availability of new evidence and the Court's reconsideration and clarification of the Order. Further clarification of these issues seeks to prevent manifest injustice to Kumaran, who as a third party beneficiary and the sole representative in the Arbitration will have to inure years of tainted arbitration, excessive costs to not just maintain the case and then vacate the awards,

1

subject to ongoing slanderous attacks and vilification by ADMIS (and its counsel) individually and personally even though not a party to the Arbitration and also multiple years of hardship to enforce its rights that have been continuing now for close to five (5) years.  This new evidence filed under Rule 60(b) demonstrates the urgency and good cause for clarification of these matters. The Court is reminded that NRCM is not only dissolved but no counsel will appear in this Arbitration and Kumaran is the sole representative as is consistent with the rules under the Federal Arbitration Act and NFA Arbitration rules, that a party may be represented by a representative or family member instead of an attorney. The Court is reminded that Kumaran is the sole Plaintiff in this action with the only operative complaint is signed by Kumaran individually. None of the corporate entities have filed a complaint in this action or asserted any claims and this is one of the first critical errors that were made in interpreting the procedural status of this action.

### III - CLARIFICATION OF ISSUES TO BE RECONSIDERED

#### Issue #1 – There Is Only One Complaint In this Action Signed Solely by Kumaran (Pro-Se)

The Court maintains a fundamental misunderstanding on who the Plaintiff is in this case, and who has brought claims. None of the Corporate Entities (whether dissolved or not), NRCM, NAM and NHC were afforded the opportunity to Intervene, or given the ability to file a Complaint. While this is to be argued by counsel in their denial of Intervention for NAM and NHC, the Court makes a significant error repeated throughout the Bench Order on who actually has brought claims in this action.

There is only one Operating Complaint in this action filed on September 30, 2021 (ECF15). That is a *Pro-Se* Complaint filed by Ms. Kumaran and is expressly clear in ¶24 that states "NRCM has been dissolved, **and has asserted no claims here.**" Pursuant to Rule 11(b)(3) a Complaint must be signed and filed by the parties filing the Complaint.  As can be seen on the record, there is no complaint filed in this action by NRCM.

(i)    NRCM has not filed a Complaint and thus has asserted no claims

Therefore the Court's repeated reference in the Bench Order (Tr.46 Ln.7-9 and Tr. 48 Ln 8-15 that refers to NRCM bringing claims in this action is a plain error. As stated clearly in the Operative Complaint ¶24 - **NRCM has asserted no claims in this action at this time.** Kumaran therefore seeks reconsideration on this procedural matter because ECF97 repeated throughout as a form to excoriate a *Pro-Se* Plaintiff on an error in fact. Further Kumaran objects to ADMIS's letter dated April 4, 2022 which continues to repeat this error in fact (ECF105) which capitalizes on the Court's error and again states "NRCM's claims are not properly brought in this forum" (See ECF105 at 2).

But there is no evidence on the record of "any claims" whatsoever "brought by NRCM" at this time and in this forum and this is a fundamental misunderstanding. Further this misunderstanding (it should be noted that ECF97, the Court uses the words "in my understanding"). Since this fact is incorrect, and it has now been repeated three (3) times by ADMIS, including in new evidence filed in the Arbitration, this new evidence supports reconsideration under Rule 60(b), and also under Rule 59(e) and Local Rule 6.3 Prong II and III -  (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. (citing to *Fulani* Id).

The Court's understanding is misguided. ¶24 of the Operating Complaint states clearly "NRCM has been dissolved and asserts no claims". The Court repeatedly states in ECF97 that the [former] Panel stayed the Arbitration not so that "NRCM could bring its claims in District Court against the NFA" and then criticizes NRCM for asserting claims in District Court. But where are these claims?

One of the primary errors that to be clarified are the Court's repeated references to "NRCM brought it claims against ADMIS".  **Tr. 46 Ln 16 – 19** 1*nstead, NRCM sought to unilaterally assert its claims against ADMIS in this action despite those claims being the subject of an ongoing, albeit stayed, arbitration*

A clear read of the **only** operating complaint shows there is only one complaint, signed and filed by a Pro-Se Plaintiff Kumaran, which expressly states that ¶24 – **NRCM asserts no claims.** The gravitas of the procedural error continues as ECF97 lies in contradiction with Rule 11(a) expressly states that in the outset, a pleading brought on behalf of an entity must be signed and filed by counsel.

> Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions (a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

Clearly there is no outbound pleading signed by NRCM or any other corporate entity in this action.

(i)   Improper Procedures in NRCM's Addition and Inconsistent Application of the Law

As such the Court makes further procedural errors. On the one hand, it asserts that NRCM must be represented by Counsel – but on the other, it has accepted a Pro-Se Complaint on behalf of NRCM, unsigned by counsel and without asserting any claims.  In fact the Court repeatedly throughout the Bench Order, decries the sole *Pro-Se* Plaintiff in this action from speaking to the issue and trying to clarify the errors, but fails to observe that NRCM is not properly a party or Plaintiff in this action.  The Courts procedural error is that it has applied an *Pro-Se* Complaint, unsigned by counsel, to repeatedly stated "NRCM has unilaterally

asserted claims against ADMIS in this action" even though Rule 11 – there is no signed complaint by NRCM or by and through its counsel.

The Court's error and inconsistencies stem from earlier Orders and procedures enacted by Magistrate Judge Aaron which must also be observed. *First*, the Court ordered on January 26, 2021 that NRCM must make a motion to intervene by February 12, 2021. (ECF30 Footnote 2). NRCM, then by and through its counsel had written to the Court and explained it was ready to file its own motion to intervene. (In fact at that time, NRCM , NAM and NHC would have all intervened at the same time). Instead, at the Magistrate's direction, the "parties" in an subsequent Order were directed to appear at a teleconference on February 10, 2021. (ECF 33)

That Order again specifically listed a sole Plaintiff as Samantha Kumaran (See caption listing only one single Plaintiff). The Order reads as follows – using again Plaintiff in the singular and the pronoun "she" to direct the word Plaintiff. ECF33 states as follows:

> The parties are directed to appear for a telephone conference on Wednesday, February 10, 2021 at 10:00 a.m. EST to discuss Defendant's February 8, 2021 Letter Motion. (*See* ECF No. 31.) At the scheduled time, the parties shall each separately call (888) 278-0296 (or (214) 765-0479) and enter access code 6489745. **Plaintiff** will have the opportunity to orally respond to Defendant's motion during the telephone conference. If **Plaintiff** wishes to file a written response prior to the conference, **she** must do so by 5:00 p.m. on Tuesday, February 9, 2021.

The Court has then adopted different standards and allowed Plaintiff (Singular / She / Kumaran) to then respond orally to Defendant's motion to have NRCM (a corporate Plaintiff) file an opposition to Defendant motion to compel arbitration and other relief on behalf of NRCM. In inconsistent procedures Magistrate Judge Aaron then held such a teleconference call, which directly asserted the rights of corporate Plaintiffs NRCM (and in fact NAM and NHC) without counsel on the call. Since the wording of the ECF33 Order did not require or request Intervenors NRCM, NRCM and NHC to join the call it is clear from the Transcript on Page 1, that no counsel was present on the call and Kumaran (she, individually, the sole Pro-Se Plaintiff) was arguing on behalf of the corporate entity. (ECF60)[1]. See ECF60 Page 1-4.

The error is compounded by a clear error in ECF63, which was also filed for reconsideration in ECF71 at 14-15, where Magistrate Judge Aaron makes a plain error in Order dated June 7, 2021 (ECF63) which states "during a telephone conference with the parties, **including Mr. August,** on February 10, 2021". (See ECF63 at 4).

---

[1] The Court should note again that ECF33 directly only Plaintiff (singular) and "she" to respond to the motion and file a response. Therefore there was a clear directive that only Pro-Se Kumaran was required on the call.

> During a telephone conference with the parties, including Mr. August, on February 10, 2021, the Court granted what it deemed to be an oral application by Kumaran to add NRCM as a Plaintiff and to amend her pleading. (*See* 2/10/2021 Order, ECF No. 36, ¶ 1.) Thus, pursuant to the February 10 Order, paragraph 24 of the Amended Complaint was amended to allege, as follows: "NRCM has been dissolved and is named as a plaintiff herein to preserve any claims that it may have." (*Id.*)

This is a clear and manifest error. Clearly as evidenced in the transcript of oral record of the Feb 10 conference (ECF60) Mr. August <u>was not present on the call</u>, and NRCM (and in fact NAM and NHC), were not represented by counsel. Therefore not only did NRCM (and NAM and NHC) not have their rights preserved in their rights to intervene which was granted on January 26, 2021 (ECF30), Magistrate Judge Aaron then proceeded with oral argument by Kumaran *Pro-Se* on behalf of NRCM to make an oral motion. This is also unjust in inconsistent standards. Moreover, Kumaran did not intend to make any oral motions in the conference. The Court in its own discretion, interpreted an explanation by Kumaran as a *Pro-Se* Plaintiffs as an "oral motion on behalf of NRCM". (See ECF60 Pg. 6-7). Kumaran asserts this is manifestly unjust and a clear error because the Court has now interpreted these events - to impute incorrect facts that "NRCM has brought claims against ADMIS" and then denied Kumaran the ability to clarify the issues in the Feb 18 2022 conference, when there was an inconsistent and erroneous application of the law. Kumaran was the sole person, permitted to assert the rights of NRCM in the initial Feb 10, 2021 conference – which has in turn led to an incorrect application of Rule 11(a). NRCM has no signed complaint, and also significantly prejudiced all Intervenors who were allowed to file intervention on February 12, 2021.[2]

As pertains to ECF97 it is also directly impacting Kumaran now in both the Arbitration and as third party beneficiary and also in individual claims by the slew of filings at the Arbitration that misconstrue ECF97. Clearly Kumaran, in her sole and individual capacity, is the only plaintiff, pursuant to Rule 11, with a signed complaint in this action. The Court's error in ECF97 goes further as it misconstrues the facts about NRCM's addition to this action. The Court's interpretation of NRCM bringing claims is not correct. On its own motion, it was Magistrate Judge Aaron who added NRCM back - on an apparent oral motion by a *Pro-Se* Plaintiff Kumaran - without the presence of counsel and without a motion to intervene which had been previously ordered in ECF30. This has significantly prejudiced Plaintiff and also the potential Intervenors.

ECF97 therefore has applied inconsistent application of the law, as Kumaran, as an individual and *Pro-Se* Plaintiff was allowed to apparently make an "oral application" to the Court to add NRCM and preserve

---

[2] The motion for reconsideration by NAM, NHC and NRCM is due also to be filed on May 3, 2022 by extension granted on April 4, 2022. (ECF107). All discussion of NAM and NHC's denial of intervention which was also impacted by this call are not discussed in this motion.

it claims, and yet the Court on Feb 18, 2022 applied a different standard that Kumaran, could not clarify any of the issues related to NRCM or even speak at the conference, even though it is the sole plaintiff with an operative complaint in this action. Since the Court has allowed Kumaran, to make "oral applications" on behalf of NRCM before, then this is a clear error in law.

(ii)   ADMIS are collaterally estopped from arguing against Kumaran's oral motion and ECF63

Furthermore, the Court is applying an inconsistent application of the law, with ADMIS' now belated objections to Kumaran's being able to clarify argument or preserve NRCM's claims. The facts show that in the oral conference on February 10, 2021 ADMIS **granted consent** for Kumaran to make an oral motion on behalf of corporate plaintiff and for NRCM to preserve it claims. Kumaran again not a trained lawyer, notes carefully the wording of Magistrate Judge Aaron's oral motion were for "NRCM to preserve any claims it has". (see ECF60 Pg. 6-7). The distinction is important.

There is no evidence in any signed pleadings before this Court, that NRCM has yet "brought its claims" or "asserted its claims". In fact the operative complaint is a filing by *only* Ms. Kumaran on September 30, 2021 expressly stated ¶24 that "NRCM asserts no claims." Therefore ECF97 contains several errors in fact to whether NRCM has in fact even brought any claims, yet, or asserted claims in this action. The error in fact is that Magistrate Judge Aaron's grant of an oral motion, potentially impermissibly made by a *Pro-Se* Plaintiff without counsel, instead **granted on consent by ADMIS**, for NRCM to "preserve its claims". This is a material distinction – including as it applies to the Court's analysis of which claims have been brought, which claims have been preserved and which claims have been asserted. This then leads to an incomplete analysis of which of NRCM's claims are arbitrable or non-arbitrable. Since NRCM has no complaint and has not brought its claims, no analysis was undertaken to the claims for instance which were not brought in Arbitration such as RICO claims or claims against Vision Investment Advisors.  The only complaint in this District pursuant to Rule 11(a) is by *Pro-Se* Plaintiff Kumaran.

At the present time, there is no record of a Complaint being signed and filed by NRCM. NRCM was terminated on August  20, 2020. (ECF11). The Court in fact dismissed NRCM's claims without prejudice. The original claims were initially brought together with Kumaran as a sole proprietor to preserve their rights and the statute of limitations. The prior Order ECF11 and the original Complaint was filed solely by a Pro-Se Plaintiff Kumaran, and she filed it as a sole-proprietorship, in this and related actions, in part because Trey Lazzara the introducing broker who opened the account, opened several of the papers and customer forms in Kumaran's individual name as the Customer. (See also 20-CV-3668 ECF113 at 9 n.13 –

6

noting Kumaran also opened the account which led to confusion that NRCM was both a sole-proprietor and/or single member LLC, and that Kumaran is also in contractual privity with ADMIS).  Regardless the Court dismissed NRCM's claims without prejudice and only allowed the action to proceed as Kumaran's individual claims *Pro-Se* and the caption was changed accordingly. (See ECF36).

Furthermore, ADMIS is now collaterally estopped from opposing NRCM's rights to preserve its claims which were apparently brought by oral motion by Kumaran. ADMIS are also collaterally estopped from opposing Kumaran's rights to also bring assert that motion, argue its rights and for NRCM to preserve its claims. The transcript in ECF60 shows clearly ADMIS's counsel Mr. Schumacher granting consent to the apparent oral application <u>by Kumaran</u> and for NRCM to preserve its claims. (See ECF60 Pg. 6-7)

> THE COURT: Yes. Thank you. So right now I'm looking at your Amended Complaint in paragraph 24, which presently reads, "NRCM has been dissolved **and has asserted no claims here**." In essence, what you're trying to do is basically amend paragraph 24 to say, "NRCM has been dissolved and is a plaintiff here to preserve any claims that NRCM may have"?
> MS. KUMARAN: That's correct. Because, to the extent that I can't as the successor preserve that claim -- and I don't know if this will come down to some technicality -- I know that the company's been dissolved at least we filed for it to be dissolved. And I don't know if Governor Cuomo is getting so many businesses filing them that they're backed up and actually issuing it. But it was filed with the certificate and the payment on the 29th. So based on that, I had, when I filed the Complaint, genuinely believed that I am able as a successor to preserve its claims. But if the Court is to later rule that no, only NRCM can do that, that's why counsel is back in. So it's sort of an either/or. I don't want to --
> THE COURT: Yes. Okay, so I deem you to have just made an oral motion to amend paragraph 24 of your Amended Complaint to say -- to add NRCM as a plaintiff and to amend paragraph 24 of the Amended Complaint to indicate that NRCM has been dissolved but is named as a plaintiff herein **to preserve any claims that NRCM** may have.
> What is ADM Investor Services' response to that oral motion?
> MR. SCHUMACHER: If it's just --
> THE COURT: Do you oppose it?
> <u>**MR. SCHUMACHER: We don't oppose it,**</u> as you --
> THE COURT: Okay. The motion is granted. I am going to enter an order today stating that during this call, an **oral motion was made by the plaintiff** to add NRCM as a plaintiff and to amend paragraph 24 of the Amended Complaint to read, "NRCM has been dissolved and is named as a plaintiff herein in order **to preserve any claim that NRCM may have**; and **that motion was granted without opposition from ADM Investor Services, Inc**."

Kumaran therefore seeks clarification of ECF97 on the Court's repeated references to NRCM's bringing claims in this action, when the Order ECF36 only stated the NRCM preserved its claims. Further Kumaran further files this motion for reconsideration as ADMIS's are now collaterally estopped from opposing that motion that Kumaran made, to preserve NRCM's claims. Accordingly ECF97 contains errors on what claims were brought, and it improperly asserts the record in fact. It also ignores the inconsistent

application of the law and the error that was made in ECF63 at 4 that Mr. August was <u>not</u> on the telephone call, and that Ms. Kumaran (Pro-Se) was allowed to bring a motion on behalf of the companies, and yet was not permitted to even clarify the errors in oral argument on Feb 18, 2022 when the Magistrate has allowed the motion to be brought. The Supreme Court has held that in oral argument, a Plaintiff or any party may argue its rights. Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below. Bankers Life & Casualty Co. v. Crenshaw, *486 U.S. 71, 78, n. 2, 108 S.Ct. 1645, 1650, n. 2, 100 L.Ed.2d 62 (1988);* Gates, supra, *462 U.S., at 219–220, 103 S.Ct., at 2322–2323;* Dewey v. Des Moines, *173 U.S. 193, 197–198, 19 S.Ct. 379, 380–381, 43 L.Ed. 665 (1899).* Kumaran is the only party or Plaintiff in <u>this</u> action with Federal claims and a signed operative complaint. ¶24 of the Complaint signed by Kumaran stated "NRCM asserts no claims". Kumaran asserts that not being able to clarify this issue on Feb 18 was manifestly unjust and caused clear errors in the Feb 18 Order.

Finally Kumaran also argues that ADMIS are now estopped from opposing Kumaran's rights to bring an oral argument and motions on behalf of NRCM, are collaterally estopped from opposing NRCM's rights to preserve its claims in this action and other issues they consented to issues considered by this action, or that NRCM was dissolved (See ECF60 Pg 7) See *Rutty v. Esagoff*, No. 17-CV-1485, 2017 WL 2178432, at *2 (E.D.N.Y.May 17, 2017) ("By virtue of the doctrine of collateral estoppel, [Defendant] is precluded from claiming that [a procedure] was improper, that … that certain entities dissolved, and the myriad other factual issues that this Court had to previously consider in the .. [a]ction."). See also *In re Ditech Holding Corp., No. 19-10412, 2021 WL 5762951, at *8 (Bankr. S.D.N.Y. Dec. 3, 2021)*[3]

### Issue #2 -Clarification on the Order Related to Stay

Plaintiff also seeks clarification of the Feb 18 Order, pursuant to Rule 60(b) and Prong 2 of Local Rule 6.3 and Local Rule 59(e) based on new evidence that has occurred just days after the conference and filed at the conflicted NFA Arbitration show there are substantial different opinions on the interpretation of ECF97 which require clarification. Kumaran, as a third party beneficiary, the sole Plaintiff with a complaint in this

---

[3] Notably ADMIS filed no opposition to the same facts and legal argument raised in ECF71 at 14-15 (and therefore conceded the argument in their Reply – "A Defendant effectively concedes Plaintiff's arguments by his failure to respond to them."). *Abreu v. Fairway Mkt. LLC, No. 17-CV-9532, 2018 WL 3579107,* at *1 (S.D.N.Y. July 24, 2018). These facts were overlooked in ECF97 that procedures were improper, as NRCM, NAM and NHC were not permitted to file a motion to intervention, and Pro-Se Plaintiff Kumaran was allowed to bring oral motions for corporations which in turn prejudiced NAM and NHC, which is subject to appeal. NAM and NHC's motion is also due on May 3, 2022 which has significantly prejudiced all parties. Noting in related case on March 15, 2021 NRCM, NAM and NHC did file interventions and file a complaint using inconsistent procedures in the two actions. ADMIS has thus acquired procedural injustice due to an error of law or mistake by the Court.

action, the sole representative and direct third party beneficiary/agent in the Arbitration, is now mired in frivolous, costly, motion practice at the tainted and impartial Arbitration and seeks clarification of the multiple interpretations of ECF97. (*See* Exhibits 1 – 5 as new evidence supporting this motion).

The recent filings at the NFA between both February 24, 2022 and March 24, 2022 (just less than a week after the Courts' Feb 18 Order) and ensuing mayhem of conflicting filings and interpretations of the Order also shows vast differences of opinion in how the Orders and Panel Orders are being interpreted requiring reconsideration and clarification.

*First*, the Feb 18 Order was interpreted by ADMIS not just once, but on two occasions that the "stay has been lifted by the Court."  As seen in their Feb 24 letter (Ex.1) – new evidence reflecting their understanding of the Bench Order -  ADMIS states "*Since the court has now compelled NRCM back to NFA arbitraon, per the Panel's previous order, the stay is lied. ADMIS requests that the Panel conduct a status hearing, via Zoom, to address crical issues that have arisen.*' [4]ADMIS interpretation that the stay has been lifted gives rise to a substantial difference of opinion. Plaintiff understood the Feb 18 Order to mean that the Court had not lifted the stay, and that the matters were being staged. See Tr 48 Ln 15-16 stating "*The Court is not mandating that the arbitration panel lift the stay of arbitration between NRCM and ADMIS*". NRCM responded to ADMIS in their Mar 7 letter (Ex. 2) and again, after the transcript was received on Mar 12, that the Court had not automatically lifted the stay. In their Mar 24 letters (Ex 4 and 5) citing not only to Tr. 48 15-16 but also Tr. 20 Ln 20-25 [5] and Tr. 23 Ln 23-25 Tr. 24 Ln 1-3[6]. both excerpts arguing the Court interpreted the Panel's prior orders stating that '*the arbitration was stayed by the panel pending resolution of the claims against the NFA.*" And also *Tr. 29 Ln 19-25* where the Court states "*We have talked about the factual issue here regarding the staging of the matters given the stay and the underlying arbitration.*" However ADMIS's understanding that the "*stay is lifted*" and the Panel should conduct "*status hearing via Zoom*" is in direct conflict with the Court's intent of staging and demonstrates multiple

---

[4] Tr. 48 Ln 15-20 states "the Court assumes that the Panel will not lift the stay until Case No. 20-cv-3668 is resolved, but the timing is up to the arbitrators." ADMIS' intent to capriciously lift the stay without consent of or making a motion to the Arbitrators is in contempt of the Feb 18 Order. The phrase conflicts other statements made about Res Judicata and the Court staging of matters, Tr. 48 15-16, Tr. 20 Ln 20-25, Tr. 23 Ln 23-25 Tr. 24 Ln 1-3 . Plaintiff seeks reconsideration because the Court misconstrued that the NFA is a quasi-Arbitrator and granting discretion to the NFA which is a party and Defendant, is conflict with Federal Statute 7 U.S.C. 25(c) (see Issue #6 infra), granting exclusive jurisdiction to the District Court.

[5] Tr. 20 Ln 20-25 THE COURT: As I understand it, the arbitrators stayed the ADMIS arbitration **pending resolution of the case against NFA.** So why is it that you believe that Magistrate Judge Aaron's decision will result in the two cases proceeding simultaneously, as opposed to having the arbitration, go back to the NFA and be stayed pursuant to its

[6] Tr. 23 Ln 23-25Tr. 24 Ln1-3 THE COURT: I don't know why you are arguing that Magistrate Judge Aaron ordered that the arbitration proceed concurrently with the matters in the District Court before the NFA, given that the arbitration was stayed by the panel **pending resolution of the claims against the NFA.**

attempts by ADMIS to move the NFA Arbitration along with the two cases proceeding simultaneously and absolutely no staging of the matters whatsoever, giving grounds for a substantial difference of opinion.

The Court's  Feb 18 Order also gives rise to the difference of opinions and requires clarification in staging as was also reflected in ADMIS' recent letter to this Court on April 4, 2022 (ECF105). ADMIS again disclosed its interpretation that "*allowing a second motion to reconsider will inevitably delay the recommencement of the NFA arbitration, and therefor unfairly prejudice ADMIS*".  Plaintiff's interpretation of the Feb 18 Order is that ADMIS' statement about delaying recommencement makes no sense. Given that the stay is still in effect and the Court expressly stated "*the arbitrators stayed the ADMIS arbitration **pending resolution** of the NFA matters*" suggests that ADMIS is simply incorrect. Resolving these reconsideration motions would not impact the recommencement of the NFA Arbitration – as the NFA proceeding 20-CV-3668 is still ongoing and not resolved. (See also Tr.47 Ln 5-11**– claims against the NFA are still ongoing in a related case**, Tr.48 Ln. 8-15 **this Court's order takes no position on any of the issues raised in that case and does not resolve them.**. Hence the Feb 18 Order has multiple interpretations and ADMIS' insistence to rush the proceedings in parallel is contradictory to the Order.

Plaintiff seeks clarification from the Court that the Feb 18 Order did not automatically default that the Arbitration stay to be lifted.  Plaintiff asserts that the ADMIS' interpretation of the Feb 18 Order in Ex. 1 that the Court had "*lifted the stay*" and that Zoom calls for status hearing should be arranged is in potential contempt of the Feb 18 Order and should be resolved. Further Plaintiff seeks clarification pursuant to 9 U.S.C. 1 el seq it is expressly in the jurisdiction for the Court and not the Arbitrators to remove the stay. [7] Plaintiff argues an incorrect application of the law – because if the Court fails to direct the timing of when the stay of Arbitration is removed, discretion of removing that stay would – in effect –be granted back to the NFA (a party) – NFA Member Rule 17. This  is precisely the argument of res judicata and collateral estoppel that is being avoided.(See #6, #7 infra – on the Court's exclusive authority)

Further the Court should note that NFA has completely abdicated its administration duties in this impartial and conflicted Arbitration. Since February 18, 2022 the dates of the recent communications (Feb 24 2022 – March 24 2022 Exhibits 1-5), NFA has completely disappeared and failed to communicate with **both** ADMIS and Plaintiffs. This again support Plaintiff's claims under 7 U.S.C. 21(b)(10) and NFA's

---

[7] The FAA has no provision regarding *staying* of an arbitration, and it does not limit the jurisdiction of a federal court to issue such a stay. *See Leesona Corp. v. Cotwool Mfg. Corp.,* 315 F.2d 538, 542 (4th Cir.1963); *Benson v. Unique Concepts, Inc.,* Civ.Act. No. 86–2038–s, slip. op. (D.Kan.1986) (available on LEXIS) (holding that district court could order a stay of an arbitration even though it lacked jurisdiction to compel arbitration).*Triple A Maint. Corp. v. Bevona,* 657 F. Supp. 1171, 1173 (S.D.N.Y. 1987)

ongoing failure to enforce any notion of a "fair, expeditious and equitable" so-called Arbitration under the CEA. Given the lack of response, filings could be withheld or concealed from the true intended recipient – the Panel - and parties have confirmation if the Arbitrators are even receiving communications. NFA is now a party and as co-Defendants are materially conflicted to be overseeing a proceeding here with quasi arbitral authority and discretion pursuant to NFA Member Rule 17 – which gives a Defendant NFA the right to "interpret its rules". This right to interpret (argued as unconscionable under 7 USC 25(b))[8] – includes refusing to submit motions and letters to the Panel. Kumaran's rights are also being significantly harmed by these filings (See Exhibit 4) in a conflicted Arbitration run by Defendants. As discussed #6 infra, the discretion of the Court to govern the stay is implied in 7 U.S.C. 25(c) and was therefore an error of law and controlling statute.

### Issue #3 - ADMIS Is attempting Res Judicata and Collateral Estoppel – Not Plaintiff

In the Feb 18 Order, the Court also raised arguments about Res Judicata and Collateral Estoppel which also give rise to a substantial difference in opinion. Omitted from the Court's review however, were ADMIS' and NFA's exchange of letters dated Jun 9 2021 and Jun 10 2021 to the Arbitrators just two (2) days after Magistrate Judge Aaron issued ECF63, attempting to move the proceedings along in parallel (See Ex 6 and 7 – supplied as new evidence under 60(b) and Loc. R 6.3). The complaints alleged that ADMIS, NFA and Kadlec are alleged to be jointly liable for and have participated in the fraud together to conceal the G&F Agreements and ORSA which gave Boshnack, Rothman and his teams, prohibited access to Plaintiffs' trading records and account. Further ADMIS, NFA and Kadlec are alleged to have acted together in illicitly permitting Boshnack, Rothman and their various new entities to act outside of their registration capacity, and continue performing duties that require registration as an FCM, that they were effectively disbarred for (and without the knowledge and consent of the CFTC). Those prohibited duties included having discretion on margin activities and performing grossly negligent error-ridden risk management on Plaintiffs trading account (without seeking their authorization and consent) which violated the black letter laws of the CEA. Defendants (including through their counsel Ms. Chou) have stated these risk activities continued with the NFA's knowledge and consent, but the CFTC has denied any knowledge of them and did not approve them. The risk services thus violated the Commodities Exchange Act and various CFTC regulations (See e.g. CFTC 1.11-1.14 and CFTC 1.55). The FAC alleges that under the guise of oral risk management services owners of the disbarred Vision, were then given discretion to manipulate margin on

[8] See ECF71 at 8, and ECF38 at 30, 32-48 and ECF37 at 53.

Plaintiffs account, and on "buying power" and "whether to extend credit", which are duties expressly reserved for FCM's in their sole discretion. These oral terms also illicitly allowed them to acquire Plaintiffs CTA competing trading account. Since Boshnack, Rothman and Felag, also now CTA's. were AP's of an FCM Vision who's registration as High Ridge was refused after Vision was effectively disbarred, they were subject to statutory disqualification and their services unlawful as defined under the CEA. NFA, ADMIS and Kadlec are alleged to have jointly participated in the fraud to conceal the illicit oral risk services from concealments. Their material omissions including not disclosing the material G&F Agreements which permitted High Ridge, Boshnack and Rothman to purloin of excessive fee from traders accounts to pay for the G&F. The concealment were material, as CTA's had a right to know of the pecuniary interest that Boshnack and his team had by placing personal guarantees on Plaintiffs' CTA trading. These facts are multiplied in materiality in that Boshnack, Rothman own directly competing CTA businesses and are "competitors" and they were AP's of the disreputable nature of the Vision firm – which boasts 172 CFTC reparations and their serial record of compliance violations. All of which are material disclosures required under the CEA and required Plaintiffs consent. Overlooked by the Court, is that the Complaint alleges that NFA, ADMIS and Kadlec are all parties to the fraud (or aided and abetted the same fraud). The claims are common as the Arbitration was used to intentionally conceal and obstruct Plaintiffs from obtaining material facts that would show NFA' sand Kadlec's concurrent violation of and failure to enforce their bylaws and regulations of the CEA, resulting in claims brough in related case 20-CV-3668. The Court makes substantial errors in fact elsewhere (discussed in Issue #5) that the claims in this action 20-CV-3873 are not of the same subject as those in 20-CV-3668 which will be argued infra. They are also pertinent to the ongoing matter in related case that the NFA also intended to delay the proceedings in the Arbitration, and ADMIS, NFA and Kadlec to run the clock on the Statute of Limitations, by withholding the G&F Agreements until October 25, 2019 [9], which is the first date, upon which Plaintiffs had sufficient evidence to sign a pleading in District Court, that would show with fact to bring claims under 7 U.S.C. 25(b), and  that NFA and Kadlec were liable for claims under 7 U.S.C. 25(b). Further the issue is directly related to the conflict in Federal Statute on when the cause of action accrues and when Plaintiffs actually asserted their claims which was March 6, 2018 under NFA Member Rule 2(1) and NFA Member Rule 6 and the equitable tolling. The issue of res judicata is also

---

[9] The Court should note in Exhibit 2, Exhibit 5 ADMIS also are in Contempt of Panel Order Octo 10, 2019 to intentionally withhold documents ordered by the Panel, and failed to produce any documents whatsoever regarding evidence of any bona-fide risk services agreement. Statements in pleadings signed by Wiggins Chou in 20-CV-3871, repeated several times the purported risk services agreement were performed with the knowledge of the NFA. 20-CV-3871 ECF37 at 12-13, 33 and 37 at 4n8.

now at risk again, by the attempt of ADMIS to rush ahead with proceedings at the control of the NFA, and secure an adverse outcome.

Ex 6 and 7 dated Jun 9 2021 and Jun 10, 2021 and also Ex. 9 on June 22, 2021, the new evidence filed shows that the Court included a mistake or incomplete facts, in why the reconsideration was filed in interpreting Judge Aaron's Order. The evidence now supplied shows it was ADMIS and not Plaintiffs that had interpreted Judge Aaron's order that the two proceedings should proceed in parallel. As can be seen in Exhibits 6-10, the Court made an error since it did not understand it was **ADMIS' interpretation** of Judge Aaron's Order, that the two proceedings should proceed in parallel with ADMIS stating to the NFA "*Nor does that justify maintaining the stay of the arbitration as it pertains to ADMIS.*" The Feb 18 Order excoriated counsel Mr. August who has never appeared in the Arbitration, for why he could possibly think Judge Aaron's Order suggested the two proceedings should proceed in parallel, but the Court but did not allow input from the actual parties representatives to the arbitration, Ms. Kumaran or Mr. Schumacher, who were both present in the Courtroom or allow facts to be addressed regarding the issues, eliding over the persons with direct knowledge of the facts of what was transpiring in the actual Arbitration.[10] That clarification would have demonstrated that it was not NRCM and Kumaran, but instead it was ADMIS and NFA who were interpreting Judge Aaron's Order to have the proceedings proceed in parallel (Ex 6, 7 and 9). Thus the Court failed to address the material issue of reconsideration that it was   ADMIS and NFA (acting together) and not Plaintiff who had interpreted Judge Aaron's Order that the two proceedings should proceed in parallel (See Ex 6, 7).

Plaintiff also seeks clarification and reargument of the Court's Order ECF97 given that ADMIS have once again rushed into the Arbitration to interpret the Order that the "Court had lifted the stay". (See Ex.1) While the Feb 24 (Ex 1) and Mar 7 (Ex 2) communications with the NFA Arbitration were without the benefit of the transcript which was received on March 12, 2022 (ECF97),  the same cannot be said for ADMIS's letter dated March 14, 2022. (Ex. 3). Here ADMIS, with full knowledge of the Court's Order, repeatedly asserts its position that the "stay is lifted" arguing that the Panel's Order January 15, 2022 supersedes the Court's Order. Plaintiff disputes this assertion as contempt of the Court Feb 18 Order.

   **ADMIS Ex. 3 Mar 14 2022** writes

---

[10] The facts show, and the only Complaint in this District signed and responded by the only parties to this action are Kumaran and ADMIS. The Court's erred to not allow any injection of the facts from the actual parties to this proceeding thus leading to incorrect facts.

The Panel's January 15, 2021 Order was clear: the arbitration was permanently stayed "until such time a court instructs NRCM it must arbitrate at NFA." That has occurred, and pursuant to the express language of the Panel's Order, **this arbitration is no longer stayed.**

**NRCM Ex. 5 Mar 24, 2022** states Tr 48 Ln 15-16
COURT: The Court is not mandating that the arbitration panel lift the stay of arbitration between NRCM and ADMIS.

Plaintiff argues that ADMIS's repeated attempts to move the proceedings along in parallel are in contempt of the Feb 18 Order and support this motion for clarification. The Court held Plaintiff's former counsel accountable for misinterpreting Judge Aaron's Order (See Tr.22 Ln20-25) but this new evidence shows that ADMIS' counsel are repeatedly moving against these Orders[11], and are now asserting that the proceeding move along concurrently. This is in turn causing manifest injustice to Plaintiff Kumaran, who is also being invoked into these proceedings. ADMIS have also taken to the last resort tactic to sow Claimant confusion, and use the uncontrolled, unsupervised and Panel-less Arbitration, to slander MS. Kumaran individually, which in turn has absorbed significant time in Ms. Kumaran individually also having to correct the record and strike offensive and contumacious conduct that ADMIS's counsel hare engaging in. (See Ex. 4). This too has caused manifest injustice to Kumaran requiring a motion under Local Rule 6.3 and 59(e) and 60(b) for the new evidence supplied.

Kumaran seeks certainty and clarification of ruling from the Court, that the two proceedings <u>should not proceed in tandem</u>, and that the Court's directive is that the NFA proceeding must be resolved first. Clearly this will eliminate any risks of Res Judicata – for instance if a biased and self-motivated Arbitration directed by the NFA (who is a party) were to quickly rule that all the fraudulent activity by ADMIS was not authorized by the NFA, those are precisely the rulings that lie in conflict with 7 U.S.C. 25(c) seeks to prevent in that exclusive jurisdiction is given to the District Court, and avoid collateral estoppel. Further, Plaintiff asserts that ADMIS are in contempt of the Feb 18 Order to attempt to move against Plaintiff, to unilaterally attempt to assert by virtue of the conflict in interpretation between ECF90 and the January 15 2021 Panel Order that "the stay has been lifted".

This is precisely the issue of controlling law under 7 U.S.C 25, that the intent of Congress in protecting traders' rights once 7 U.S.C. 25 (b) is invoked, is that the District Court has exclusive jurisdiction over all these actions, and as argued below (#7) that the NFA Arbitration "contract" under basic contract principles under 9 U.S.C. 2 is void and needs to be reformed so that NFA can recuse itself. Further it supports the argument that 7 U.S.C 25 (b) takes precedence.

---

[11] ADMIS are also in contempt of the Panel Order dated October 10, 2019 (Ex. 2) and blatantly refused to produce any documents related to the risk services agreements. Violations are ignored by the NFA and NFA-controlled Panel, causing years and years of delays in the conflicted arbitration forum. These documents, would invoke liability to Kadlec and NFA since they signed them.

### Issue #4 – Conflict of Interest

Substantial difference of opinion, which requires clarification, also arises in the Feb 18 Order as to when, where and by whom the conflicts of interest should be resolved. In contradiction of the FAA, which requires conflicts of interest to be resolved promptly, ADMIS' interpretation of the Feb 18 Order is that conflict of interest should now never be resolved and that the Court's order is that the issue of conflict of interest should be ignored by the Arbitrators - going further that the existing subpoenas should not be enforced. (See both Ex 3 on Mar 14,  also Ex. 9 on Jun 22, 2021 where ADMIS' interpretation of Judge Aaron's Order and the Feb 18 Order to stated  "*To be clear, ADMIS objects to any further requests by NRCM and/or Ms. Kumaran for information relating to conflicts of interest.*"  Conversely, Plaintiff interprets the Feb 18 Order that the conflict of interest will be resolved by the Court's during its resolution of the NFA case 20-CV-3668 including the matters of fraud. See e.g. Tr.48 Ln8-15, Tr.44 Ln15-23, Tr.46 Ln 25, Tr.47 Ln 1-2, Tr.47 Ln 5-11.

The Court's order was unclear and left the matter in limbo, leading to much dischord at the NFA. The Court's Order does not state whether the conflict of interest would be resolved by virtue of its judication over the NFA Proceeding. ECF97 also omits material factual references to the intent of the Panel on November 1, 2019 and November 4, 2019 to resolve the conflict of interests, *prior to* any adjudication on the merits. The Feb 18 Order while pointing out only that it intended NFA members to remain in this forum, then ignored the orders (ECF52, ECF53), that the Arbitrators ordered 2 subpoenas on the NFA to disclose and resolve information related to the conflict of interest. Having two different judicial bodies resolve the NFA conflicts of interest is also not consistent with  25(b). Plaintiffs interpret ECF97 that the Court will resolve the conflict of interest by virtue of its resolution of the NFA case 20-CV-3668. ADMIS's instead interprets the Order that the Arbitrators should <u>never</u> enforce the subpoenas or <u>ever</u> investigate the conflicts. Kadlec who is also a party to the NFA matter has a vested interest in documents not being produced to show his authorization of disclosure of the risk services arrangements. It is clear the Feb 18 Order made no attempt to squash the subpoenas already issued. ADMIS's interpretation is again incorrect, manifestly unjust and attempts again to delay material production of documents that could expose NFA and Kadlec's role in the common fraud. Furthermore the Feb 18 Order is also unclear as to who, when and which action must resolution of the conflict, which Plaintiff asserts fall under the jurisdiction of the District Court, pursuant to 25(c) and 9 U.S.C. 2 (Supra).

In any event, it certainly cannot be interpreted to absolve the Arbitrators duty to resolve the conflicts. "When an arbitrator knows of a potential conflict, a failure to either investigate or disclose an intention not

to investigate is indicative of evident partiality." *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 138 (C.A.2 (N.Y.),2007* It therefore follows that where an arbitrator has reason to believe that a nontrivial conflict of interest might exist, he must (1) investigate the conflict (which may reveal information that must be disclosed under *Commonwealth Coatings* ) or (2) disclose his reasons for believing there might be a conflict and his intention not to investigate. Therefore ADMIS's recent filings (new evidence) show further intent to defy the intent of the ECF97, FAA and more importantly Plaintiffs rights.

### Issue #5 – Errors in Fact in Common Facts of Fraud and Related Actions

The foundation of the Court's error in application of the law is in  7 U.S.C. 25(b) and 25(c) and stems from an apparent misunderstanding in ECF97 on the underlying facts and nature of the two actions – related actions 20-CV-3873 and 20-CV-3668. The Court states at Tr.46 Ln 10-12  that Plaintiffs "***dispute against the NFA,  is** i**nsofar as I can perceive, not the subject of this lawsuit.**"  This is a far from correct. First, the Court's factual assessment that the dispute against the NFA is not the subject of the lawsuit is erroneous and the Court's factual foundation is incorrect. The basis of error, is that the underlying subject of fraud (and common facts) in case 20-CV-3668 (against both NFA, its compliance officers and Kadlec, its Board Member and in capacity as CEO of ADMIS) and 20-CV-3873 involve almost identical claims, and most certainly the same underlying facts and fraud. Namely, the same facts related to the common fraud, that NFA, ADMIS, Kadlec (and others), acted ***together*** and knowingly and actively participated in a scheme since 2014, to conceal from commodities futures customers - traders  that include Plaintiffs - who opened accounts at ADMIS, the material facts that their accounts would be subject to significant guarantees and fees by Boshnack, Rothman and their new entities High Ridge Futures and High Ridge Holdings.[12] The first agreement, called a Guaranty and Fee Agreement (**"G&F")** is memorialized in a contract dated August 28, 2014 and executed by Defendant Tom Kadlec (CEO of ADMIS) who is a Defendant in 20-CV-3668 for the same underlying fraud as ADMIS in case 20-CV-3873. (Docketed at 20-CV-3668 ECF31) [13]

The common facts and fraud between the two cases, that the Court overlooked in ECF97, includes without limitation that the Defendants in all related cases 20-CV-3873, 20-CV-3668 and 20-CV-3871 – all engaged in material acts, misrepresentations and/or omissions to conceal from customers the G&F arrangements and disreputable fraudsters, Boshnack, Rothman and High Ridge's ongoing role in their trading accounts. The G&F  allows Boshnack and Rothman, who were the owners of the previously disbarred Vision to place

---

[12] ¶2 of the G&F states that Boshnack and Rothman are providing services in their capacity as managers of "Holdings". FINRA disclosures states that the agreement to reorganize Vision transferred all business to Holdings or HRHC. Hi
[13] The G&F Agreement is filed under seal at 20-CV-3668 ECF31and in partially redacted form at 20-CV-3668 ECF82

individual guarantees on its competitors CTA's accounts and withdraw excessive fees. This information was material, as NFA themselves acknowledged the materiality of the disciplinary conduct against Vision being available to customers of High Ridge  in NFA Basic, as Vision boasts extensive disciplinary conduct, and was subject to over 172 CFTC reparations cases filed against them. The common facts and fraud, state that NFA, ADMIS and Kadlec, knew the excessive fees being withdrawn from the G&F Agreements  – alleged to be  over $10 million a year were being withdrawn, but that the Defendants acted together to conceal this information so that customers would not have the right to opt-out and to prevent Vision IB's from exiting the market. Judge Aaron's ruling in 20-CV-3668 ECF113 at 3-11 also confirms the significant of overlap in the three cases.  By concealing this G&F from customers, customers who would have ordinarily had the opportunity to review High Ridge, Boshnack and Rothman's prior disciplinary history in NFA Basic, they all acted to prevent customers from opting out and maintaining futures accounts under false pretenses. They would then have opted out or chosen not to do business with ADMIS.   Therefore the common fraud by all Defendants (NFA, ADMIS and Kadlec) was intended to deceive customers, and conceal this information from public literature and mandatory disclosure under the CEA to preserve a "significant stream of revenue".

Therefore NFA, ADMIS and Kadlec are alleged to be parties to the same fraud. The Complaint against NFA also states that if customers learned their accounts were guaranteed by the owners of Vision was effectively disbarred, or that these arrangements gave them material pecuniary interest in their accounts, they would never have opened accounts at ADMIS. Further it alleges that failure to disclosure violated the CEA and that customers had a right to know (under the black letter laws of the CEA) that their trading accounts were guaranteed by their competitors CTA, formerly Vision, and subject to Boshnack and Rothman who not only withdrew excessive fees from CTA's accounts, without their knowledge and consent, but acquired their competitors trading data, and were prohibited. The overlapping cases argue that NFA, ADMIS and Kadlec all had fiduciary and statutory duties to disclose the arrangements. Therefore the Feb 18 Order that does not perceive the cases to be of the same subject of fraud is incorrect.  In addition, the overlapping subject of fraud is that NFA also have imputed knowledge of Kadlec which the Court ignores is a party to the case 20-CV-3668 case and also a Defendant. Therefore the Court errs to ignore that 20-CV-3668 includes identical and overlapping claims against ADMIS's CEO Tom Kadlec, who as control person, and joint maker of the statements and/or who directed, controlled and authorized the fraudulent statements in ADMIS' public literature – such as corporate disclosure (See ADMIS FAC - ECF 15 Ex 1-5).

Further, the Court's error in ECF97 that the cases are not of the same subject could not be further from the truth, as relates to the second set of arrangements between ADMIS (defendant in this action 20-CV-3873) and defendants Boshnack, Rothman, Felag, High Ridge and High Ridge Holdings in related action 20-CV-3871, and the NFA and Kadlec in 20-CV-3668. This second arrangement, involves a purported oral risk services arrangement ("ORSA") agreed to between ADMIS, Boshnack, Rothman, Felag and High Ridge (and approved by the NFA) to "secretly" allow the former Vision team, to provide risk services that are prohibited under the rules of the CEA and CFTC. This ORSA allowed them to exercise discretion on behalf of the FCM on traders' risk levels and trading execution. As stated supra, these arrangement violated the CEA, not only because they were not in compliance with CFTC Regs 1.11-1.14 and CFTC 1.55 requiring disclosures to the traders of the arrangements prior to account opening for consent, the illegal risk services, were apparently approved by the NFA. Hence NFA and Kadlec's role in approving or allowing Boshnack, Rothman and Felag to continue to act in a manner outside of their registration capacity, constitutes further violations of the CEA, for which claims have also been brought under 7 U.S.C. §25(b) for NFA's failure to enforce the CEA and its bylaws, rules and regs, to allow the former AP's of an effectively disbarred Vision, to continue to act outside their registration capacity in a manner they were statutorily disqualified for. These related cases, which invoke all Defendants in related action, state that the parties knew the arrangements were unlawful (as defined under the CEA), and concealed the arrangements from traders which caused Plaintiffs substantial losses in their trading accounts and also their businesses as CTA's. The core allegations are of fraud and aiding and abetting fraud (brought under the 7 U.S.C. §25(b) for aiding and abetting liability of the NFA, Kadlec and its compliance officers) in Counts 3, 4 and 8 involved ADMIS and Kadlec as the primary violators and also alleged NFA as a primary and secondary violator on the same underlying concealment of the arrangements from traders. Plaintiffs have alleged that NFA is a fiduciary to Plaintiff as a registered CTA and paying member, and also had a statutory duty to disclose the arrangement to Plaintiffs when required. The consistent and overlapping claims of fraud allege that NFA, ADMIS and Kadlec all conspired to conceal the arrangement in NFA Basic and in public disclosures, so that customers are not aware that behind the scenes, their competitors High Ridge and Boshnack, Rothman are continuing to operate as a FCM, white labelled in the shoes of ADMIS, and are really the guarantors of their accounts, withdrawing fees, and exercising discretion on their accounts (without consent). This is one common overlapping fraud – and on common and overlapping set of facts and contracts. Therefore the Court's ruling

in ECF97 that the subject is not the same is plain error.  Based on an incorrect factual premise, the Court then misapplied controlling areas of law  and incorrectly applied the statute 7 U.S.C. §25.

### Issue #6 – 7 U.S.C. §25(b)

Because the Court relied on incorrect foundation of facts (Issue #5 supra) and overlooked the commonality of the fraud between ADMIS, NFA and Kadlec, this led to an incomplete conclusion and application of law of 7 U.S.C. §25(b) [14]. As a first matter it is not disputed that the plain text of the statute 7 U.S.C. §25 (c) states that

> 25 (c) Jurisdiction; statute of limitations; venue; process The United States district courts shall have
> exclusive jurisdiction of actions brought under this section.

The application of law that was overlooked by the Court was in the meaning and interpretation of the word "actions" under Congress's intent of the statute. Plaintiff asserts these are "related actions" and because the Court misunderstood the facts above and how the cases related – even thought it is noted the Court accepted the cases on August 6, 2020 in 20-CV-3668 as related actions.[15] When called on to interpret a statute, this Court generally seeks to discern and apply the ordinary meaning of its terms at the time of their adoption. *Niz-Chavez v. Garland*, 593 U.S., 141 S.Ct. 1474, 1479–1480, L.Ed.2d (2021) *BP P.L.C. v. Mayor & City Council of Baltimore, 141 S. Ct. 1532, 1537, 209 L. Ed. 2d 631 (2021)*

The Court acknowledged in ECF97 that Plaintiff's briefing was particularly unclear. Plaintiff therefore seeks reconsideration on arguments on whether 7 U.S.C. §25(b) and 7 U.S.C. §25(c) takes precedence.[16] The Court acknowledged that this was "a substantial portion of the briefing" Tr.22 Ln. 11-12. The Court also specifically ruled in ECF97 that the briefing was not clear (Tr. 46 Ln 1-7 (Plaintiffs "briefing on this issue is poorly drafted and particularly unclear.") Here reconsideration should be granted because prior submissions by Plaintiffs to the Court did not clearly present the particular argument, and it is not wholly new theory of the case. (See also *Coventry Cap. US LLC v. EEA Life Settlements Inc., 439 F. Supp. 3d 169, 176 (S.D.N.Y. 2020)* holding that when "prior submissions to this Court did not clearly present this particular argument, it is not a wholly new theory of the case" and "the Court exercises its discretion to accept the [Plaintiffs] belated submission" - granting reconsideration on this issue.

---

[14] Instead of arguing on the merits, the Court focusses on a scrivener's error to use the word precedent instead of precedence. While there was a spelling error, there is manifest injustice in the Court not addressing the arguments on the merits and proceeding with legitimate resolution on the material importance of the application of 7 U.S.C. 25 (b) and (c).

[15] It is noted however the Court did in fact accept the three cases as "Related Actions" by Order in 20-CV-3668 on August 6, 2020. This was also filed at ECF4 on Jun 8, 2020 in this action, and the three actions accepted as related in 20-CV-3668.

[16] The Court spent much of its time in oral argument on a scrivener's error on whether Plaintiff meant precedent or precedence in its argument on the primary arguments related to the importance of 7 U.S.C. 25 (b).  Kumaran wrote the brief and in haste used the incorrect word. This however should not deflect from the central arguments being raised.

Here the *first impression* issue on precedence on how 7 U.S.C. §25 (c) applies is three-fold. [1] First Plaintiff asserts that the Court incorrectly applied the statute 25(c) that Congress intended the words of the statute to use the word "actions" – in the plural – and that because these are "related-actions", the application of 25(c) applies to all "actions", that have the same underlying fraud, are based on the common facts and events. Since the Court accepts these actions as "related actions" and the Court made an error (see #5 supra) on the overlapping fraud and underlying common issues of fact, Plaintiff argues the Court misapplied Congress' clear intent of the §25(c) in this first impression case, by a trader asserting its rights dually against the NFA, as well certain NFA Members ADMIS – that acted in together with the NFA on the same underlying fraud and common facts. Plaintiff asserts that the Court misapplied the intent of the Federal Statute of §25(c) that grants the District Court exclusive jurisdiction on those related claims and actions – specifically the fraud that was joined by ADMIS, Kadlec and NFA.

[2] The Court misapplies the precedence with regards to 7 U.S.C. §25(c) – not only because of a prior error in that NRCM has not brought any claims in this action, and has asserted no claims – in that it failed to apply the proper federal standards of arbitrability in addressing Congress' intent under §25(c) on whether (even though arbitrable as Judge Aaron ruled) are still prohibited by Federal Statute §25(c). The Court's error in law (which stems from two prior errors in fact #1, and #5) is as follows.

Because the underlying relatedness of the cases was in error, the Court did not undertake the proper analysis whether, as a matter of law, Federal Statute under 7 U.S.C. §25(c), grants exclusive jurisdiction to the Court of all actions which are related actions, and prohibits arbitrability of certain claims such as fraud, in the case of NFA being a party to the same fraud and/or requires reform of the Arbitration contract. The issue of controlling law that the Court in overlooked, is that Courts have held that even if claims are determined to be arbitrable, the Court must examine whether Federal Statute 7 U.S.C. §25(c) takes precedence on whether Congress intended those claims to be non-arbitrable, given the express wording and intent of §25(c). See e.g. *Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 848 (2d Cir. 1987)* applying analysis to other Federal Statutes "[Federal Statutory] claims fall within the arbitration clauses, we must next decide as a matter of law whether Congress intended [the Federal Statutory] claims to be non-arbitrable. In *Genesco,* the Courts went further examining the purpose underlying the Federal Statute to determine whether – due to an inherent conflict between those purposes and the arbitration of such claims – Congress implicitly intended those claims to be non-arbitrable.

Here Plaintiffs identified an incurable conflict of interest in NFA continuing this Arbitration. Arguably the former Arbitration Panel, also identified the same incurable conflict of interest by granting a permanent stay. [17] The Court acknowledged the conflict of interest but did not resolve it. The Court overlooked in its analysis of whether Federal Statute §25(c) intended these claims to be arbitrable before the NFA. There is a conflict between the intent of 7 U.S.C. 25(c) – granting exclusive jurisdiction to the District Court, and NFA Member Arbitration Rules 2(a)(1) and 17 which allow the NFA to be a party (defendant) and then continue to act in a quasi judicial capacity, with discretion to interpret its rules, administering an Arbitration, where itself is viewed as an "Arbitrator". Plaintiffs have also asserted this conflicts with another Federal Statute 9 U.S.C. §1 el seq, that requires the desire of Congress to provide not merely for any arbitration **but for an impartial one**" *Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 147, 89 S.Ct. 337,21L.Ed.2d 301[1968]). In *Commonwealth Coatings Corp.,* the Court also rejected the argument that Congress intended "to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another" (393 U.S. at 150, 89 S.Ct. 337). This puts the four statutes and regulations 7 U.S.C. §25(c), 9 U.S.C. §1 el seq, NFA Mem Arb. Rule 2(a)(1) and Rule 17 granting NFA discretion over the proceeding and also a "party" (Defendant) in direct conflict of interest with each other, and the cross-roads of intersection between four Federal statutes intent.

Even though Judge Aaron ruled claims are arbitrable, the Court overlooked the law and analysis of whether the Statutory regime prohibits the arbitrability of these common issues of fraud and fact before the NFA (now a party and Defendant), when the express intent of 7 U.S.C. §25(c) is to give that jurisdiction to the District Court. The error in law in the Feb 18 Order, was that, based on its prior error #5 in not properly applying the common facts,  the Court did not examine the congressional intent of arbitrability under the statute § 25(b)(c). See Mitsubishi, 105 S.Ct. at 3355, 3358–60 (examining, in the absence of an explicit statement of congressional intent as to arbitrability, congressional policies behind § 4 of the Clayton Act); cf. McDonald v. City of West Branch, 466 U.S. 284, 290, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984) (holding that § 1983 claims are nonarbitrable because arbitration "cannot provide an adequate substitute for a judicial proceeding" in achieving § 1983's objectives); Barrentine v. Arkansas–Best Freight Sys., 450 U.S. 728, 742–45, 101 S.Ct. 1437, 1445–47, 67 L.Ed.2d 641 (1981) (finding congressional intent that Fair Labor

---

[17] The Feb 18 Order also overlooked the material fact and distinction in the Panel's Order that the stay was "Permanent". The Order of a Permanent Stay, implicitly infers an incurable conflict of interest, that Arbitrators could not resolve, that placed jurisdiction back to the Court. Implicit in the January 15 Order is the Panels' intent that conflict could not be cured, thus making the stay permanent, and implicit in that ruling was their finding that the case could not be heard before the NFA. This granted jurisdiction back to the Court to resolve the conflict of interest. This ruling is consistent with 7 U.S.C 25(c).

Standards Act of 1938 claims be nonarbitrable because of conflict between arbitration and FLSA's purposes); Alexander v. Gardner–Denver Co., 415 U.S. 36, 56, 94 S.Ct. 1011, 1023, 39 L.Ed.2d 147 (1974) ("The purpose and procedures of Title VII indicate that Congress intended federal courts to exercise final responsibility for enforcement of Title VII; deferral to arbitral decisions would be inconsistent with that goal.").See  *Genesco, Id*

[3] Instead, the Court applied its arguments to the conflicts raised under §25(b) to a staging of the matters, and that the intent of the Panel was that the NFA case would be resolved first.(see e.g. Tr.46 Ln 1-7 "NRCM argues that under 7 U.S.C. § 25(b), NRCM's lawsuit against the NFA must be resolved prior to the NFA) but this was not the intent of the briefing and why the Court overlooked how  §25(b) takes precedence.[18] As argued in #1, ADMIS has not interpreted the Feb 18 Order in that proceedings should be "staged", and this also has led to this clarification Order. Plaintiff argues that was an incorrect application of the Federal Statute § 25(b) and § 25(c) granting exclusive jurisdiction to the related action as Congress' intent of § 25(b) was to protect injured traders. The 2nd Circuit has pointed out that the private remedy was designed to reflect "a balance that does not insulate [exchange'] officials from answering serious questions posed by injured traders." (735 F.2d at 677, *Sam Wong & Son v. NY Merc Exch., 735 F.2d 653 (2d Cir 1984)*). Further the "staging" does not resolve the incurable conflict of  interest – which was not the intent of  §25(b). Hence the claims related to the underlying fraud of ADMIS, NFA and Kadlec are intended by Congress to be in this District.

### Issue #7 – 9 U.S.C. § 2 was misunderstood

In addition, 7 U.S.C. §25(c) being invoked to seek relief the District Court,  also invokes 9 USC § 2. In the alternative Plaintiff argues that §25(c) grants jurisdiction to the Court, pursuant to 9 U.S.C. § 2 to reform any inherent "arbitration contract" by and between NFA Members, when the NFA is a party to the case under 7 USC 25(c). The Court's error in ECF97 was that it overlooked Plaintiff's rights to seek redress from the Court to under 9 U.S.C. §2 to reform NFA Member Rules 2(a)(1) and/or to reform the Arbitration agreements under general contract principles of fraud and unconscionability.  Under Chapter 1 of the Federal Arbitration Act (FAA), arbitration agreements may be enforced by nonsignatories through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel. 9 U.S.C.A. § 1 et seq. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 207 L. Ed. 2d 1 (2020) Section 2—the FAA's substantive mandate—makes written

---

[18] (see Issue #6 - [1] and [2] supra - that an incurable conflict of interest arises, and that the Federal Statutory regime under 25(c) requires these claims be brought in District Court, and based on erroneous facts #5 – these are related actions).

arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." That provision creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts "to place such agreements upon the same footing as other contracts." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (internal quotation marks omitted). *Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 629–31, 129 S. Ct. 1896, 1901–02, 173 L. Ed 2d 832 (2009)*[19]

The Court pointed only to the "contract" with ADMIS, but overlooked the arguments raised by ADMIS that there was a second inherent contract between "NFA members" – for their requirement to remain at the NFA (See ECF22).[20] Concurrent with the above misunderstanding of the common claims and related actions, the Feb 18 Order also misapplied Plaintiff's rights to seek redress from the District Court reform the Arbitration contract pursuant to 9 U.S.C. §2 under basic contract principles of fraud, duress and unconscionability.[21] Instead the Court focused its arguments on 9 U.S.C. §10 but its error was it overlooked the primary arguments on contract reform which were grounded in 9 U.S.C §2. Plaintiff was arguing in the alternative to §25(c) granting exclusive jurisdiction, that the Court has the authority reform the NFA contract of arbitration, as is also permitted under the ADMIS arbitration agreement, that if arbitrability is still warranted, outside of §25(c), 9 U.S.C. §2 permits the Court to reform NFA Member Rule § 2(a) to allow the parties to arbitrate in another forum.

### Issue # 8 - 9 U.S.C. 4 and Discovery

---

[19] "[S]tate law," therefore, is applicable to determine  which contracts are binding under § 2 and enforceable under § 3 "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas,* 482 U.S. 483, 493, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). See also *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Because "traditional principles" of state law allow a contract to be enforced by or against nonparties to the contract through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel," 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed.2001) (See Anderson *Id*)

[20] The Court also questioned the relevance of a Party no longer being a member. Plaintiff documents several inconsistencies and misapplication of the Panel Orders. The final Panel Order on November 19, 2019 made no such statement, and the initial Panel Order on November 1, 2019, *sua sponte* stating it would entertain a stay, made no mention of "NFA Members remaining in this forum". Plaintiff has asserted the two changes were made by NFA, exercising its discretion under Rule 17 – to add language to the November 13, 2019 Order, and also add language that neither ADMIS and Plaintiff had consented to on November 19, 2019 that the stay would be made permanent after one year. Each change is in direct conflict with 25(c) and supports NFA and ADMIS attempting denying Plaintiff from bringing its claims in District Court. Judge Aaron has ordered NRCM had a right to preserve its claims on oral motion on February 10, 2021. Given NRCM is no longer a member since July 30, 2020, the application of the November 13, 2019 Order is moot, and is further superseded by the November 19, 2019 Order as well as the January 15, 2021 Order which makes no such reference, and invokes a permanent stay, because inherent in that permanent stay, the Arbitrators recognized an incurable conflict of interest, that the matter could no longer proceed before the NFA. The incurability of the conflict is clear in their order. The Court also overlooks the material fact that ADMIS also moved for a "permanent stay" of the Arbitration on November 24, 2019. Given ADMIS moved for a permanent stay, they also attempted to deny adjudication.

[21] Unconscionability was also raised in ECF71 at 8, and briefed extensively in ECF38 at 30, 32-48 and ECF37 at 53

By again incorrectly focusing its arguments on 9 U.S.C. §10, and because the Court overlooked the common facts related to fraud which give rise to related actions (See#5), and the Court misapplied Plaintiffs rights to preliminary discovery when fraud is part of the Arbitration itself, and also Plaintiff cross-motion to prevent Arbitration pursuant to 9 U.S.C. §4. [22] Plaintiffs arguments of fraud are also inherent throughout the brief – namely that the NFA induced Plaintiffs to pay money to the NFA to investigate compliance complaints, and then used the NFA Arbitration Forum, to shield their own liability and control discovery on any documents, that would show their own liability under §25(b). Specifically NFA, Kadlec and ADMIS intended to run the clock on the statute of limitations, by overtly taking actions to conceal the G&F until October 25, 2019 after the two year statute, and used other fraudulent tactics to conceal their role in the conduct, raising inherent conflicts against in NFA Member Rule 2(a)(1) and 7 U.S.C. § 25(c) – where the same underlying fraud is part of the three cases. The Courts' misunderstanding of the overlapping fraud, led to incorrect application of the law to allow discovery[23] to resolve NFA's role in the fraud or application (see #6) supra to §25(c) and the jurisdiction of the fraud claims, or whether the intent of Congress was on the arbitrability of these claims. Plaintiff asserts the denial of discovery, to resolve the fraud being an inherent part of the Arbitration was an error. The Court's argument that Plaintiff did not move to stay the Arbitration also relied on incomplete facts.[24] The Panel already had stayed the Arbitration *sua sponte* on November 1, 2019. Plaintiffs only had sufficient facts to bring their 7 USC §25 (b) claims after receipt of the October 25, 2019 G&F Agreements. Therefore since the Panel had already stayed the proceeding there was no need for a stay to be filed in Court. The Arbitration was already stayed.[25]

---

[22] Again the Court focusses on a scrivener's error that Plaintiff used the word "M.J. Aaron should conduct discovery" as opposed to parties should conduct discovery. It is clear elsewhere in the briefing that Plaintiffs did in fact use the correct language. (See Tr. 71 at 11-12). Nonetheless hidden under the typographical errors, the Court misunderstood the focal point in why the parties should be entitled preliminary discovery – because the NFA Arbitration agreement – the contract that NFA Members must arbitration on common issues of fraud – when NFA is a party under 25(c) – was overlooked under Second Circuit guidance, that when fraud is part of the Arbitration itself the Court should allow discovery. (See Garten v. Kurth, 265 F.3d136 (2d Cir. 2001)) .

[23] The Court observes again another scrivener's error in Tr.45 Ln25 of whether the Court should resolve all facts in a motion to compel arbitration. This argument was argued throughout Plaintiffs briefs using correct wording with application of law being that the Court is required to resolve all facts related to the fraud in the arbitrability. The Court's focused on a scrivener's typo to gloss over the material fact and application of law, that fraudulent inducement and fraud that goes to the heart of the Arbitration is void. ECF71 at 11, ECF 78 at See also ECF 37 at 37-43, ECF38 at 6, 13

[24] The Panel can't just stay the proceedings without a reason on their own motion. Somebody realized there was an incurable conflict of interest and that the NFA could not hear the proceeding. The Court also overlooked the other material facts leading up to the Panel's own decision to stay. NFA failed to respond to a Panel directive on October 16, 2019 to respond to the conflict argued in motions to enforce second subpoena on October 14, 2021. The Court's oversight also is manifest in that that Panel also identified an incurable conflict inherent in their grant of two subpoenas on the NFA – which have yet to be enforced. Therefore the Court misconstrues that the Panel – realized – the NFA conflict could not be resolved – making the stay "permanent". Reversing discretion to the Panel that had made the stay permanent, and in transferred authority back to the Court is an error. Nonetheless it contravenes the intent of 7 U.S.C. 25(c).

[25] The Court's analysis of disclosures required under the FAA does not apply the correct application of the law and precedent (See *Commonwealth*). Moreover the Code of Ethics of Arbitrators in Commercial Disputes lays out the Canons of disclosures.

## IV – STANDING

Under Chapter 1 of the Federal Arbitration Act (FAA), arbitration agreements may be enforced by nonsignatories through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel. 9 U.S.C.A. § 1 et seq. G*E Energy S. Ct. 1637, 207 L. Ed. 2d 1 (2020)*. Kumaran invokes its rights to bring this motion as a third party beneficiary. Ms. Kumaran is the third party beneficiary and representative of NRCM, which was filed to be dissolved on September 29, 2020. The Court added back NRCM by Order of Magistrate Judge Aaron by allowing Kumaran a Pro-Se party to make motions on behalf of NRCM. The only operative complaint in this District is by Pro-Se Plaintiff. Kumaran is also a third party beneficiary of the ADMIS agreement (See ECF 22.1 ¶26-28). There are no claims brought in this Action other than by one Plaintiff.

Kumaran was the sole-member of NRCM which was a proprietary trading firm as a pass-through entity to Ms. Kumaran. NRCM has no assets, and the plain text of the ADMIS contracts confer on Ms. Kumaran direct liabilities to ADMIS' as representative and agent. (See ECF¶22.1 Para 26-28). Kumaran is also the sole representative in the foregoing Arbitrations at the NFA. Further Kumaran is and remains a registered NFA Member. Kumaran is a Plaintiff in the related case 20-CV-3668. A person seeking to enforce their rights as a "third-party beneficiary must [however] establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost' " *Nanomedicon, LLC v. Research Foundation of State Univ. of New York,* 112 AD3d 594, 596, 976 N.Y.S.2d 191[2nd Dept.2013[26]].

Applying this standard, Plaintiff is clearly intended (as opposed to incidental) beneficiary of the contract provisions. As such Kumaran has individual standing to enforce [or revoke] its terms (*Burns Jackson Miller Summit & Spitzer v. Lindner, supra; Grunewald v. Metropolitan Museum of Art,* 125 AD3d 438, 3 N.Y.S.3d 23 [1st Dept.2015]). Kumaran as a registered CTA, and also a trader is in contractual privity with ADMIS, and also has individual claims against the NFA. NFA has not disputed standing against Kumaran as the registered AP. Kumaran's rights are also directly impact her ongoing CTA.

Kumaran also individually standards to suffer inordinate ongoing damages having to proceed in multiple piecemeal actions across several forums to enforce its rights. As stated supra, the Supreme Court

[26] quoting *State of Cal. Pub. Employees' Retirement Sys. v. Shearman & Sterling,* 95 N.Y.2d 427, 434–435, 718 N.Y.S.2d 256, 741 N.E.2d 101, *quoting, Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 336, 464 N.Y.S.2d 712, 451 N.E.2d 459)

has held that Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below. [27] Kumaran is the only party in this action with Federal claims and a signed operative complaint. ¶24 of the Complaint signed only by Kumaran stated  "NRCM brings no claims".

## V – CONCLUSION

Plaintiff respectfully requests that the Court grant reconsideration, clarification and re-argument of its February 18, 2022 on the issues raised above.


Respectfully submitted
//SSK//
Samantha S. Kumaran
Acting Individually and as Third Party Beneficiary

---

[27] *Bankers Life & Casualty Co. v. Crenshaw,* 486 U.S. 71, 78, n. 2, 108 S.Ct. 1645, 1650, n. 2, 100 L.Ed.2d 62 (1988); *Gates, supra,* 462 U.S., at 219–220, 103 S.Ct., at 2322–2323; *Dewey v. Des Moines,* 173 U.S. 193, 197–198, 19 S.Ct. 379, 380–381, 43 L.Ed. 665 (1899).